SIMON J. HAPP

*v.*

JOHN HAPP *et al.*

*Filed at Ottawa May 15, 1895.*

1. DEEDS—*effect of surrender of unrecorded deed.* The surrender of an unrecorded deed to the grantor, who is in possession of the land, may give him an equitable title, which will be sufficient to defeat any right of action of the grantee for the property.

2. LIMITATIONS—*permitting grantor to remain in possession—Burnt Records act.* A grantee in an unrecorded deed who permits the grantor and those claiming under him to remain in possession and control of the land, as absolute owners, for more than thirty years, without asserting his title, is barred from a suit to establish his title under the Burnt Records act.

APPEAL from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

HARBERT & DALEY, for appellant:

Possession must be adverse in its inception and character, and so continue. *Morse* v. *Seibold*, 147 Ill. 323 ; *McClelland* v. *Kellogg*, 17 id. 504; *Mettler* v. *Miller*, 129 id. 630.

The element of hostility to the title of the true owner is an indispensable ingredient of adverse possession. *Timmons* v. *Tidwell*, 138 Ill. 17.

Where the possession has been consistent with or in submission to the title of the real owner, nothing but a clear, unequivocal and notorious disclaimer and disavowal of the title of such owner will render the possession, however long continued, adverse. *Rigg* v. *Cook*, 4 Gilm. 351.

Notice of such disavowal must be brought home to the owner of the paramount title. Tyler on Ejectment, 876, 877; *Chickering* v. *Failes*, 26 Ill. 519 ; *Graydon* v. *Hurd*, 55 Fed. Rep. 724; *Rix* v. *Horstmann*, 93 Cal. 502.

There could be no *laches* until there was an adverse claim. Furthermore, as the defendants did not plead *laches*, they cannot urge it upon a general demurrer, nor upon this appeal. *Zeigler* v. *Hughes*, 56 Ill. 301; *Darst* v. *Murphy*, 119 id. 344; *Dawson* v. *Vickery*, 150 id. 403.

W. A. HAMILTON, for appellees:

Any act which denotes an open and exclusive dominion will answer the requirements of the statute. *Riggs* v. *Girard*, 133 Ill. 619; *Williams* v. *Ballance*, 23 id. 193 ; *Scott* v. *Delaney*, 87 id. 146 ; *Brooks* v. *Bruyn*, 24 id. 372 ; *Kline* v. *Booth*, 70 id. 587.

Using and controlling land is a sufficient assertion of title, (*Railroad Co.* v. *Houghton*, 125 Ill. 233,) and we need not prove payment of taxes. *McNamara* v. *Seaton*, 82 Ill. 498 ; *Flaherty* v. *McCormick*, 113 id. 538.

The great contest is made by the appellant on the good faith of our claim of title. Good faith is simply a want of fraud. Notice of adverse claims does not affect it. *McConnell* v. *Street*, 17 Ill. 253 ; *Chickering* v. *Failes*, 26 id. 507; *Dickinson* v. *Breedon*, 30 id. 279 ; *McCagg* v. *Heacock*, 34 id. 476.

Nor are imperfections in the claimant's title evidence of bad faith. *Dawley* v. *Van Court*, 21 Ill. 460 ; *Coward* v. *Coward*, 148 id. 268.

Mr. Justice Craig delivered the opinion of the court:

This was a proceeding in the Superior Court of Cook county, brought by appellant, Simon J. Happ, under the Burnt Records act, to establish title to certain premises in Cook county, described in the petition. The defendants put in an answer, and also filed a cross-petition, praying that the title to the premises be confirmed in them. On the hearing, upon the pleadings and evidence and report of the master, the court entered a decree in favor of defendants in the cross-petition, to reverse which the complainant appealed.

It appears from the record that John Happ, father of petitioner, was originally the owner in fee of the premises in controversy. He derived title thereto by *mesne* conveyances from the government. On the third day of September, 1856, John Happ and his wife, Gertrude, executed a deed which purported to convey the premises to Simon J. Happ, the petitioner, who was then about sixteen years of age. Whether this deed was ever delivered to the grantee is a question left in doubt from the evidence. The deed was, however, never placed on record. In 1858 Simon became very anxious to go to California, and called on his father to furnish him money to make the journey. After much persuasion the father consented, and gave the young man $300 in gold. It is claimed by defendants that petitioner, upon receiving the $300 from his father, agreed to surrender all title he

held to the land in controversy, and in pursuance of this agreement the deed was surrendered and canceled; while, on the other hand, petitioner claims that he turned over a horse and wagon, carpenter tools, some cord wood and a few pigs for the money advanced, and that he left the deed in the hands of his mother for safe keeping. Upon receiving the money petitioner went to California. John Happ remained in possession of the land in dispute until May 25, 1863, when he died. Before his death he made a will, in which he devised the premises to his wife, Gertrude The will having been probated, Gertrude went into the possession of the premises and continued in possession until August, 1876, when she conveyed a portion of the premises to her sons John and Bertram Happ, and in September, 1877, she conveyed the remainder to Bertram. These grantees, and those claiming under them, have held the possession of the premises ever since.

It is conceded in the argument that if the petitioner, at the time he went to California, in 1858, surrendered to his father his interest in the premises, although no deed was executed by him reconveying to his father, the surrender of his interest and return of the deed made to him would be sufficient to invest the father with an equitable interest in the premises and preclude a recovery by petitioner,—and this seems to be in harmony with the law as laid down by this court in *Sanford* v. *Finkle*, 112 Ill. 146. The real question, then, in controversy between the parties is, whether the petitioner, in 1858, received from his father $300, and in consideration of the money so received surrendered his deed and claim to the property.

The first witness who testified in regard to the arrangement between the petitioner and his father was John Happ. He testified that he was present when the deed was made; that it was retained in the possession of the grantor, for the reason, he thought, the grantee was too young to be entrusted with the custody of a deed. He further testified: "My father kept that deed in his own

possession. I have seen it different times. I saw it five or six years after my father had it in his possession. Simon came to Chicago to learn the carpenter trade, and it was hard times and he could hardly make enough to pay his board, and finally there were a lot of young fellows going to California, and Simon wanted to go, and teased father a couple of months for $300. That was all the money my father had and that was all the land he had, and father didn't like to give him the money, because he was too old to work; but he didn't give up till father gave him $300 in gold. I was present at the time, and father then said: 'Now, Sam, you ain't going to have this land if you take that money. I have got to keep that land to myself.' Sam replied, 'Well, I am satisfied with the money to go out to California, because I know I can do better in California than I can do here.' That was in 1858. I was present at the time. My father would never do anything without asking my permit—what I thought of it. This conversation took place about two weeks before Simon went away. They talked about the same matter afterwards. Sam went to California and was there eight years, and he came back and was here eight years, and never opened his mouth about the land. I can't say that they talked about it again before Simon went to California. My father gave Simon $300 in gold about two weeks before he went to California. Simon was then about eighteen years old. After Simon went to California I have heard father say he was going to keep that land and will it to my mother, so that she would have something to depend on."

In addition to the testimony of this witness, it appears that a short time before Simon started for California he visited his sister, Catharine Peterman, and while there, as she and her son, John Peterman, testify, Simon stated that he had received $300 from his father and that he had nothing further to do with the land. There was also other evidence in corroboration of the testimony of the

three witnesses.  On the other hand, the petitioner, in his testimony, denied making the statements in reference to the money and the land proven by defendants, and in addition to this he called as a witness Joseph Happ, who in substance testified that petitioner left with his father certain articles of personal property to be turned into money, in payment of the $300 received from the father. He also testified that Simon told his father he would leave the deed with him until he returned, and his father said he would take care of the land.

The master in chancery, in his report, found "that the plaintiff gave the deed to his parents, intending thereby to accept $300 in full payment therefor," and we are inclined to the opinion, after a careful consideration of all the evidence in the case, that the finding is sustained by a preponderance of the evidence.  Moreover, the long delay and *laches* of petitioner in asserting title to the premises may be regarded as a bar to the relief claimed in the petition.  John Happ, the father of the petitioner, went into the possession of the land in 1858.  From that time on he continued in the possession, asserting title, and paid all taxes each year on the land, until his death, in 1863.  After his death his widow, Gertrude, to whom the land was devised, entered into the possession and paid the taxes each year until 1876 or 1877, when she conveyed, and her grantees have held the land and paid all taxes ever since.  The bill was not filed in this case until 1893.  Here was a period of over thirty years in which the complainant, with a full knowledge of all the facts, has suffered John Happ, and those claiming under him, to possess and control the land as absolute owners, without asserting title to the property.  This long delay may be regarded as a complete bar to the relief claimed in the petition.

The decree of the Superior Court will be affirmed.

*Decree affirmed.*