JAMES . BROWN, Appellant, v. EMILIE BROWN.

**Contract:** PAROL EVIDENCE: VARIANCE.   Communications of a party to his attorney made during negotiations which resulted in a contract settlement of his property rights, as to the effect the instrument would have on his rights, cannot be shown as against the other party in variance of the terms of the contract.

**Husband and wife:** SETTLEMENT OF PROPERTY RIGHTS: EVIDENCE.   Evidence reviewed and held to show that a contract made in settlement of all plaintiff's interest in defendant's property which he may have acquired subsequent to their marriage, was with the understanding on the part of the plaintiff that he thereby relinquished all his interest in the property previously conveyed to him, the conveyance having been surrendered and destroyed by defendant; and that the settlement was conclusive against any continuing interest therein.

**Deeds:** SURRENDER: ESTOPPEL.  A voluntary surrender of an unrecorded
3  deed with intention of relinquishing all title conveyed thereby,
which is accepted by the grantor with that understanding and in
consideration of other agreements between the parties, will estop
the grantee from asserting any further right thereunder.

*Appeal from Pottawatlamie District Court.*—HON. A. B.
THORNELL, Judge.

THURSDAY, APRIL 8, 1909.

ACTION for partition of certain real property.  The
defendant denied any interest of the plaintiff in the prop-
erty, and asserted in herself full ownership, and she asked
to have her title quieted as against plaintiff.  After a hear-
ing on the merits, the court dismissed plaintiff's petition,
and he appeals.—*Affirmed.*

*Turner & Cullison,* for appellant.

*Ira R. Stitt, Frank Shinn* and *Jennings & Mattox,*
for appellee.

McCLAIN, J.—The alleged right of plaintiff in the
property in controversy arose out of a conveyance by de-
fendant to plaintiff of a half interest in all the property
of the defendant which was executed after plaintiff and
defendant became husband and wife.  For defendant the
principal contentions are that the conveyance was not ab-
solute, but conditional, and that the conditions thereof
were broken by the plaintiff; that, with the intention to
surrender to defendant all interest in the property, the deed
from defendant to plaintiff was by plaintiff surrendered
to defendant, and by her destroyed; and that, in a settle-
ment made between the parties as to their property rights
incident to the granting of a divorce to the defendant from
the plaintiff, the deed already referred to as having been

surrendered and canceled. was expressly recited to have been by mutual consent surrendered, abrogated and destroyed, and a sum of money specified was received by plaintiff from the defendant in full satisfaction of any interest or claim in defendant's property. As the testimony of witnesses is in material respects in conflict, it will be necessary to state briefly the relations between the parties prior to the making of the deed by defendant to plaintiff, and the incidents attending the surrender of such deed and. a subsequent contract of settlement, in which the surrender and destruction of the deed was recited to have been by mutual consent, as bearing upon and tending to explain their acts, and it will assist in the interpretation of the evidence to bear in mind that plaintiff attempts to meet and explain the recitals in the contract of settlement only on the theory that it was never intended by such contract to affect his interest in defendant's property acquired by the deed on which he relies for title.

In 1893 plaintiff became pastor of a church at Macedonia, in this State, in which defendant was a member. At that time plaintiff was about thirty-seven years of age, and defendant, a widow, possessing about $30,000 in property, consisting principally of farms, was of the age of fifty-one years. Defendant had one daughter of the age of fourteen residing with her, and had other children who were married. Soon after becoming located in Macedonia, the plaintiff became a boarder in the home of the defendant, and about six months afterwards commenced to have illicit relations with her. He continued to live in her home until in the spring of 1897, when at defendant's solicitation and with reluctance on the part of plaintiff they were married. One of the reasons assigned by plaintiff for the reluctance which he expressed to defendant in regard to the marriage was that plaintiff had also had illicit relations with defendant's daughter above referred to after his illicit relations with defendant had commenced.

Soon after the marriage, the parties went to an attorney in a neighboring town, as the plaintiff says, for the purpose of reducing to writing an antenuptial contract, by which, in consideration of the marriage, defendant was to convey to plaintiff a half interest in her property; but, being advised that it was too late to make a valid antenuptial contract, defendant executed a will leaving one-half of her property to plaintiff in the event that he should survive her. A few months later, at plaintiff's further solicitations, the parties went to an attorney in Council Bluffs for assistance in making some contract relating to the interest which plaintiff should have in defendant's property, and were again advised that it was too late to make an antenuptial contract, but a deed was then drawn with reference to the interest, present or prospective, which plaintiff should have in the property, and an accompanying contract, in which it was agreed that the proceeds from the property should constitute a partnership fund, from which either might draw for personal and family expenses. In accordance with this contract, an account was opened in the bank in the name of James and Emilie Brown, from which the plaintiff drew money by checks signed in the assumed partnership name, while defendant drew from the same account by checks signed in her own name. Into this partnership account were turned the rents from the property which had theretofore belonged to the defendant and some small amounts of money of the plaintiff. The plaintiff had resigned his charge of the church at Macedonia, but continued as a general evangelist or preacher at large, and seems to have engaged also to some extent in the business of selling books. He was absent from home for considerable periods, and, so far as appears, supported himself while thus absent, but to some extent while at home his personal expenses were drawn from the partnership fund, and all the expenses of the family and the

charges for keeping up the property were drawn from that source.

In 1903 defendant had become dissatisfied with her relations to plaintiff, and applied to the attorney in Council Bluffs who had drawn the deed and contract to institute an action for divorce, and, according to her testimony, the petition contained a prayer for the setting aside of the deed and contract. When defendant returned home, she advised plaintiff of the institution of this action, and plaintiff brought the deed and contract to her and delivered them into her hands, saying, as testified by defendant and her daughter who was present, that he relinquished all claims thereunder. A few days afterward defendant destroyed the deed and contract which had thus been delivered to her; but the action for divorce was abandoned before notice was served, and the parties continued to live together under some apparent efforts at reconciliation. A few weeks later, apparently in pursuance of this arrangement for reconciliation, the defendant executed to her daughter a deed for a forty-acre tract of land included within the description of the previous deed to plaintiff, and plaintiff joined therein as husband of defendant, and not as part owner, and in the same transaction the defendant made a deed to plaintiff for the town property in Macedonia on which they resided, valued at from $1,200 to $1,500 in which the daughter joined for the purpose of extinguishing some interest therein as heir to her father, from whom defendant derived title. In the fall of 1904 leases for the farm lands were made in the name of defendant alone, and not in the name of defendant and plaintiff as joint owners, and sometime during this year the partnership account at the bank was discontinued. The relations between the parties continued to be strained, and in December, 1904, defendant, as plaintiff testifies, threatened to turn him out of the house, whereupon he insisted that he was the owner of the property on

which they resided, and perhaps it was for the defendant
and her daughter to leave, if there was to be a separation.
Defendant then offered him $100 to go away, and he re-
plied that he had no desire to go away, and would not
consider doing so for less than $10,000. Thereupon de-
fendant instituted another action for divorce, and proposed
through her attorney to the attorney of the plaintiff that
she would give him $2,500 in settlement of all claims on
the plaintiff's part. An agreement of settlement was then
drawn up by the attorney for this defendant in consul-
tation with and by the approval of the attorney for this
plaintiff and in plaintiff's presence, to which the names of
the parties were attached by their respective attorneys, con-
taining the following recitals: "Whereas, differences have
arisen between James Brown and his wife, Emilie Brown,
over certain property rights of said parties, and, whereas,
a certain antenuptial contract or to be more specific a
contract with reference to their property rights made after
marriage has been by mutual consent surrendered, abro-
gated and destroyed, and whereas, each of the parties here-
to have certain real property standing of record in their
name and to adjust all matters relating to the interests of
the said James Brown in the interest of his wife's, Emilie
Brown's, property the following agreement has been en-
tered into; and, whereas, further, there is now pending a
suit by Emilie Brown, plaintiff, against James Brown, de-
fendant, for divorce this is therefore to witness." Follow-
ing these recitals are the terms of an agreement by which
defendant undertook to pay $2,500 to plaintiff and an
agreed amount to his attorney in the event that the di-
vorce should be decreed, and plaintiff undertook to make
defendant a warranty deed for the Macedonia property,
and it was recited "that, when said deed is delivered and
said money paid, this shall be treated as receipt in full for
all alimony, support, claim or interest each has in the
other's property or ever will have by reason of said mar-

riage relation." A decree was entered in pursuance of this arrangement in February, 1905, and the stipulated sum was paid to plaintiff, who had already left the town of Macedonia. From the time of receiving the money under this settlement until the institution of this suit in April, 1906, plaintiff had made no claim to any interest in the property covered by the original deed of defendant to plaintiff. He had not paid taxes, claimed a share of the rent, taken any part in the leasing of the property, nor asserted any other rights as owner.

The contention of plaintiff that, notwithstanding the settlement, he is still the owner of an undivided one-half interest in the property described in the original deed from defendant to plaintiff, is founded on a construction of the agreement of settlement, which excludes from it the interest which plaintiff claims was vested in him by the deed, and he supports this contention by his own testimony to the effect that, when he delivered the deed and contract to the defendant, he did not intend and used no language indicating the intention to surrender his rights under those instruments, but yielded possession of them to defendant on her solicitation in order to avoid trouble with defendant's married son, and with the assurance from, defendant that the transfer of possession of the instruments would not in any way affect plaintiff's rights. Plaintiff testified that he had no knowledge of any prayer in the first petition for a divorce for the cancellation of these instruments, and that the act of the defendant in subsequently in the fall of 1904 taking leases in her own name was explained to him by her as not an intentional disclaimer of his continuing interest in the property; and he further testified that, when the final contract of settlement was made, he attempted to call his attorney's attention to the fact that he had other interest in the property than that which was to be covered by the contract and was told by such attorney that it made no difference, so

that plaintiff supposed such interest was not foreclosed by the agreement. To make clear the contention for defendant, it is necessary to say further that she and her daughter testified over plaintiff's objection as to the contents of the deed and contract which defendant had destroyed, stating that the deed contained conditions such as that the plaintiff should acquire no interest during defendant's lifetime, and that, on failure of plaintiff to support the defendant and her daughter, the deed should become void. As the attorney who drew the instrument does not corroborate defendant and her daughter with reference to the terms embodied therein, we shall assume that such conditions are not proven, and that the instrument purported to convey a present undivided interest in defendant's property. This concession avoids the necessity of considering any question as to the admissibility of defendant's testimony in regard to the contents of an instrument which she had voluntarily destroyed.

We need not discuss the argument of counsel relating to the admissibility of the testimony of the attorney who acted for plaintiff in negotiating the settlement as to whether plaintiff called the attorney's attention to other rights in defendant's property than those referred to in the contract as being surrendered. The instrument must speak for itself in the light of the circumstances under which it was executed as known to the opposite party, and any communications of plaintiff to his attorney as to what he supposed the effect of the instrument would be could not be shown as against the defendant for the purpose of varying its terms.

1. CONTRACTS: parol evidence: variance.

In view of this necessarily extended statement of the relations between the parties, we feel justified in announcing our conclusions in brief terms. Plaintiff well knew that defendant had repudiated the partnership agreement by closing the partnership account at the bank, and as-

suming to lease the property in her own name, and he had

*2. HUSBAND AND WIFE: settlement of property rights: evidence.*

on his part made no unequivocal assertion of any right under the deed after he had voluntarily placed it in the defendant's hands without specific provision for its custody. He knew that defendant was desirous of being rid of him and of excluding him from exercising any further right in property which had been exclusively hers until after the marriage, and in which he had acquired an interest only by virtue of some arrangement made while the marriage relations were in existence. The only rights to any property which had belonged to the defendant which plaintiff actively asserted after negotiations for a separation had commenced were his apparent rights under a deed from defendant to the property in Macedonia on which they resided, and these rights were specifically cut off by the final settlement. It is inconceivable that plaintiff had any reason to suppose that defendant was making this settlement with the understanding that plaintiff still retained a half interest in property which had been hers after the marriage. Under these circumstances, we think the settlement to be conclusive against any such continuing interest.

Counsel for plaintiff contend that, after title has passed by conveyance, a mere surrender to the grantor of the instrument of conveyance does not terminate the title of the grantee, and, as a general proposition,

*3. DEEDS: surrender: estoppel.*

this may be conceded to be correct; but, on the other hand, it is well settled that a voluntary surrender of the possession of an unrecorded deed made with the intention of relinquishing the title conveyed by it and accepted by the grantor as such relinquishment in consideration of other agreements between the parties founded thereon will estop the grantee from asserting any further right under such instrument. *Farrar v. Farrar,* 4 N. H. 191 (17 Am. Dec. 410); *Mussey v.*

*Holt,* 24 N. H. 248 (55 Am. Dec. 234); *Howard v. Huffman,* 3 Head (Tenn.), 562 (75 Am. Dec. 783); *Huffman v. Huffman,* 1 Lea (Tenn.), 491; *Peterson v. Carson,* 48 S. W. (Tenn.) 383; *Crossman v. Keister,* 223 Ill. 69 (79 N. E. 58, 8 L. R. A. (N. S.) 698, 114 Am. St. Rep. 305); *Slaughter v. Bernards,* 97 Wis. 184 (72 N. W. 977); *Albrecht v. Albrecht,* 121 Iowa, 521. The trial court did not err in dismissing plaintiff's petition.—*Affirmed.*