### No. 9011.

### TALLMAN *v.* HUFF

1. CONVEYANCE OF LANDS—*Destruction of,*—By the grantor, at request of the grantee, reinvests the grantor with title where this is the intent of the parties.

2. APPEAL AND ERROR—*Finding Supported by the Evidence,* will not be disturbed, though the evidence is in some respects unsatisfactory, and a contrary finding might have been supported.

*Error to San Miguel District Court, Hon. Thomas J. Black, Judge.*

Mr. L. W. ALLEN, for plaintiff in error.

Messrs. FINK & WOOD, for defendant in error.

Mr. Justice Garrigues delivered the opinion of the court.

May 13, 1915, Effie Huff brought suit in ejectment under the code of 1887, (Chap. 23, Colo. R. S., 1908) in the District Court of San Miguel county, against G. W. Tallman as defendant below, to recover possession of certain real estate in the town of Norwood. August 21, 1915, defendant answered. The first defense is in substance a general denial; the second alleges that January 2, 1913, Asa Huff, plaintiff's husband, caused the record title to the premises to be placed in her name, but that the property really belonged to him, and August 25, 1913, defendant

caused an attachment to be levied on it as his property; that judgment was recovered against him, and the attachment sustained; that upon execution sale, defendant was the purchaser, and August 16, 1915, obtained a sheriff's deed for, is now the owner in possession, and entitled to the possession of the property under the sheriff's deed.

March 31, 1913, Tallman paid a note of $500.00, which he had signed with Mr. Huff as accommodation maker, at the Bank of Telluride, and the attachment suit against him was to recover on this indebtedness. In that suit, judgment was obtained against Mr. Huff and the attached property was sold on execution. Tallman bid it in and obtained a sheriff's deed August 16, 1915.

Plaintiff and her husband were married in August, 1910, and she claims her funds, which she placed in his hands after they were married, were used by him in paying for the place, and that she authorized him to purchase it for her. None of the witnesses conflict in their testimony. Morgan, the person from whom the property was purchased, testified in substance that he sold the property to Mr. Huff November 27, 1911, for $1,120.00 in cash, and on that day executed and delivered a deed to him; that October 11, 1912, Mr. Huff returned to him the unrecorded deed, and requested him to destroy it and make a new deed to his wife; that he, Morgan, burned the old deed, in the presence of and at the request of Mr. Huff, and then and there executed and delivered to him in its place a new deed to his wife, for the property. This second deed is dated November 22, 1911, was acknowledged October 11, 1912, and filed for record January 2, 1913.

Mrs. Huff testified regarding the transaction that her husband attended to buying the property for her, at her request, and with her money; that he brought the deed home, handed it to her and said: "It has not been recorded, you will have to have it recorded. Take care of it."; that she supposed it was all right, and put it away in her trunk without reading it; that as far as she knew nothing fur-

ther was done with it, and it remained there for about a year; that her husband went away, and in getting her affairs in shape after he left, she decided to record the deed; that if it ever left her possession until she had it recorded, she did not know of it, and that she never knew that two deeds had been executed.

Mr. Huff conducted a saloon business in Norwood, and he and his wife had lived in the house in question sometime before it was purchased from Morgan. Shortly after the purchase, he left and went to South America.

Mrs. Huff testified further, in substance, that the property was bought with her funds, and that she in fact paid the consideration, although her husband attended to the business. In accounting for how and where she obtained the money, she said she had an interest with her father and brother in livestock brought from South Dakota, and that as the property was sold, they turned over to her, her share which amounted to $600.00. This evidence is not disputed, and is corroborated by other testimony. That she had $250.00 when they were married that she had saved from stenographic work; that her brother made her a wedding present of $100.00; that she boarded the men who worked in her husband's saloon, kept a cow and chickens, and sold milk and eggs, from which sources combined, she saved up $200.00; that instead of depositing it in the bank, she turned all the money over to her husband to keep for her, with the understanding that it should be used in buying a home; that after they moved into the Morgan house, and had lived there for a time, she decided she liked it, and authorized him to buy it for her; that she gave this money to her husband to keep for her, to be used in buying them a home, and that he told her he had used the money in paying for the Morgan property.

The court found that plaintiff furnished the funds to purchase the property, with the understanding that the title was to be taken in her name, and that at the time of the attachment levy, it was her property and not the prop-

erty of her husband; that no credit was obtained by her husband on account of his supposed ownership of the property; that she did not take the title for the purpose of defrauding her husband's creditors, and that she is and was at the time of the beginning of this suit, the owner of the legal and 'equitable title and entered judgment accordingly. *Opinion of the Court.*

1. Plaintiff in error argues four points: First, That recording a deed that has been delivered is not necessary to convey title to the grantee, and under our decisions the unrecorded deed from Morgan to Mr. Huff, conveyed the title to the latter; that the cancellation and destruction of the unrecorded deed, under our statute requiring conveyances to be in writing, did not re-establish title in Morgan, therefore, when he made the second deed purporting to convey the premises to Mrs. Huff, it conveyed no title, because the title still remained in Mr. Huff, notwithstanding the burning by Morgan of the unrecorded deed, and that this title was attached and sold on execution, and is the basis of Tallman's deed. Second, That the evidence does not show beyond a reasonable doubt that Mrs. Huff furnished the funds that paid for the premises. Third, That if she did furnish the funds, the title was taken in her name for the purpose of hindering, delaying and defrauding her husband's creditors, in which she participated. Fourth, That the conveyance to her was in fraud of creditors and is void.

From the view we are inclined to take of the matter, a decision of the first point disposes of the case.

2. When Huff took the unrecorded deed back to Morgan and requested him to destroy it and make a new deed to his wife, to which Morgan consented, and then and there cancelled the original deed by burning it, with the mutual intention that it should be destroyed, and a new deed executed in its place, and after such destruction of the original deed, Morgan at the request of Mr. Huff, made a new deed to Mrs. Huff, the practical effect of the transaction

was the same as if the grantor had made the deed originally to Mrs. Huff, and no mere theory regarding the destruction of the original deed not reinvesting the grantor with title, can change the practical effect of the transaction. The voluntary surrender and destruction of an unrecorded deed by the grantor, at the request of the grantee, where the intention of all the parties is to reinvest the title in the grantor, reinvests the grantor with the whole title, at least, this is the practical effect of such a transaction. Anyhow, Mr. Huff, after the destruction of the deed, had no title which he could assert against anyone, or in any court, consequently Tallman acquired no title at the judicial sale. Whatever trust, if any, was established in the premises in Mr. Huff, was extinguished by operation of law when, at his request, the deed was burned and cancelled by Morgan, and a new deed in its place executed to his wife. So we shall treat the case the same as though the original deed was made to Mrs. Huff, and give no effect to the unrecorded deed that was burned. We know there are many authorities holding the contrary, especially among the older cases, but we think the trend of modern authority is as above announced. The following cases tend to support this position:

*Matheson v. Matheson,* 139 Iowa 511, 117 N. W. 755; *Brown v. Brown,* 142 Iowa 125-133, 120 N. W. 724; *Happ v. Happ,* 156 Ill. 183, 41 N. E. 39; *Gillespie v. Gillespie,* 159 Ill. 84, 42 N. E. 305; *Russell v. Meyer,* 7 N. D. 335, 75 N. W. 262, 47 L. R. A. 637; *Farrar v. Farrar,* 4 N. H. 191, 17 Am. Dec. 411; *Thompson v. Thompson,* 9 Ind. 323, 68 Am. Dec. 638; *Howard v. Huffman,* 3 Head (Tenn.) 562, 75 Am. Dec. 783, 784; 2 Jones on Evidence, § 420; Tiedman on Real Property, p. 561, § 741.

3. The disposition of this branch of the case eliminates all questions regarding a resulting trust or preferred creditors and matters of a like nature that have been urged, and the only question remaining is whether the conveyance to plaintiff is in fraud of creditors and void. Upon this

point the case is so very close to the border line, that we would not disturb a finding of the court either way. Because we might have found differently had we been the trier of the facts, makes no difference. It was the province of the trial court to pass upon the questions of fact, and while it is true there is no conflict in the testimony and some of it is quite unsatisfactory, still we do not feel that the finding is so unsupported by the evidence as to require a reversal as a matter of law. The judgment is therefore affirmed.

*Judgment Affirmed.*

Chief Justice Hill and Mr. Justice Scott concur.