## McBIRNEY v. BADER et al.

No. 27267.    Oct. 19, 1937.

Rehearing Denied Nov. 16, 1937.

Felix A. Bodovitz, for plaintiff in error.

Charles Skalnik, for defendants in error.

PHELPS, J.    This was an action on a note and for foreclosure of the mortgage given to secure it.  Personal judgment was sought against the original makers of the note and mortgage, and against a corporate grantee which had assumed 'and agreed to pay the indebtedness, by the terms of the deed conveying the property to it.  Personal judgment was also sought against the three trustees of a business trust to which that corporate grantee had in turn negotiated for the sale of the property under the expectation that said business trust would likewise assume and pay the mortgage indebtedness.  The trial court granted judgment foreclosing the mortgage, and rendered personal judgment against the original mortgagor, and also against the corporate grantee which had assumed the mortgage debt, but did not render personal judgment against the trustees of the business trust.  The plaintiff appeals, contending that the trial court should also have entered personal judgment against the trustees.

The facts are many and varied, but only those will be stated which are pertinent to the issues controlling in the case.  John McD. Parks and Delia Parks, then owners of the real estate involved, mortgaged the property to secure the payment of their note to the Exchange National Bank, on which note there was due at the time of the trial the sum of $9,911.09.  The plaintiff is trustee to the successor of the mortgagee.  John McD. Parks and Delia Parks afterward conveyed the premises to the King-Parks Company, a corporation, by deed, in which the grantee, the King-Parks Company, assumed and agreed to pay the mortgage indebtedness.  Delia Parks died prior to the bringing of this action, and is not involved herein.  We shall hereafter treat the subject as if John McD. Parks had been the sole mortgagor.

In April of 1930 the defendants W. C. Bader, F. I. Bader, F. W. Vaden, and John McD. Parks were conducting three separate

businesses of their own, for the sale of meat market equipment and butcher supplies. They desired to consolidate their three profitable businesses and undertook to accomplish that consolidation under the form of a business trust. For this purpose they executed a trust agreement covering the powers and responsibilities of the trustees and the working of the trust. Therein they named certain separate pieces of property belonging to each of them individually and provided that said property would be transferred to themselves as trustees of the trust estate. Each of the contracting parties was to be a trustee, and each was to own certain beneficial interests in the trust estate, and would receive "beneficial certificates" to be issued to them in the value and to the extent of the fair cash value of the assets which they were to contribute to the trust estate.

A "schedule" was attached to the trust agreement, listing the various pieces of property which the individuals proposed and agreed to contribute to the trust estate, and it included the real estate which is the subject of the present mortgage foreclosure. Though it was owned by the King-Parks Company, it appears that the beneficial certificates therefor were to be issued to John McD. Parks. The portion of the schedule listing the property herein involved, and which was proposed therein to be conveyed to the trust, reads as follows:

"From the King-Parks Company, a corporation, of Tulsa, Oklahoma, the following described * * * property:

"Certain improved real estate, described as follows: The easterly 60 feet of Lot 4, and the south 25 feet of the easterly 40 feet of lot 5 of block 126, original townsite of Tulsa, subject to a first mortgage of nine thousand one hundred and fifty dollars and seventy cents ($9,150.70) to the Exchange National Company, Tulsa, Oklahoma, which the trustees agree to assume and pay."

It will thus be observed that the understanding was that upon the real estate being conveyed to the trust the trustees "agree to assume and pay" the mortgage in suit. At this point it may be observed, for it is one of the vital points in the case, that unless the property was conveyed to the trust the trustees assumed no liability, for the foregoing excerpt plainly shows that the trustees in said instrument do not thereby assume the mortgage but "agree to" assume and pay. Obviously it was not intended that

there would be an assumption of the debt unless the property should be conveyed to the trust. This is furthermore evident by the fact that the consideration to be received by Parks from the trust, for said property, was not yet determined or made certain, for the following paragraph follows the description of the property:

"It is mutually agreed that the value of the property above set out shall be determined by the trustees and beneficial certificates issued for the full fair cash values thereof."

The deed contemplated by the trust agreement was executed by the King-Parks Company, and on the face thereof there appeared no provision that the grantee was to or did assume and agree to pay the mortgage. However, it appears to be conceded by all parties that the separate instrument constituting the trust agreement could serve the same purpose as if the provision had been inserted in the deed itself and it is therefore unnecessary to consider that point, and we accordingly assume for the purposes of this case that the inclusion of the provision in the trust agreement would serve the same purpose as if the provision had been placed in the deed.

But there is some conflict in the evidence over the question of whether there was ever a complete delivery of the deed to the contemplated grantee, the trust estate. Parks, who appears to be considered as the real grantor, had a box in the office safe of the trust estate, and it appears that he placed the deed in that box, where it remained for about two years, during the events and developments hereinafter described. However, the trustees took physical possession of the premises, and negotiated with several loan companies over the possibility of obtaining an additional loan on the place, and were unsuccessful.

In the foregoing excerpt from the schedule to the trust agreement the mortgage of nine thousand and some dollars was the only mortgage mentioned. It appears that after the execution of this agreement it was learned that there was also a second mortgage of about $7,000 on the property, and when the trustees undertook to learn the value of the property, in order to determine the amount of beneficial certificates to be issued to Parks in return therefor, they discovered that the property was not worth the sum of both mortgages. Accordingly, al-

though the trustees endeavored over a period of two years to work out that detail, they were unsuccessful, so that no certificates were ever issued to Parks for the property, and the trustees never recorded the deed. Parks eventually removed the deed from his box in the office safe and kept it. This was with the agreement and consent of the other trustees. In other words, that part of the deal was simply called off. During all of this time the mortgagee had no knowledge of this transaction, had not recognized it, and therefore had in no manner changed its position by reason of these negotiations. In fact, when the present suit was filed, the trustees were not even made parties to the action. And the deed had not been and was never recorded. The recording thereof apparently was considered premature by Parks on the one hand, and the remaining trustees on the other hand, and so they considered it unnecessary that they execute any deed conveying the property back to Parks. The trust, therefore, did not execute any such deed to him, reconveying the property, if in fact there had been a conveyance from him to the trust estate in the first place, that is, assuming there had been a delivery of the deed.

The first proposition of the plaintiff, in attempting to establish that the trial court erred in not rendering personal judgments against the trustees, is in substance that where a purchaser buys land incumbered by a mortgage, and, as a part of the transaction, assumes payment of such mortgage, the mortgagee has the right to enforce the assumption agreement against the purchaser. This is undoubtedly the law. Page v. Hinchee, 174 Okla. 537, 51 P. (2d) 487; Scott v. Norris, 62 Okla. 292, 162 P. 1085; Winans v. Hare, 46 Okla. 741, 148 P. 1052; Parlette v. Equitable Farm Mtg. Co., 165 Okla. 155, 25 P. (2d) 300, and cases cited in those decisions. But, although we may take the proposition as true, yet, as will be pointed out later, its enforcement is subject to certain qualifications (Page v. Hinchee, supra), and it is not decisive of this case.

Plaintiff's second proposition is that legal title became vested in the trust estate by delivery of the deed. But the question which at once arises is: Was there a delivery of the deed? The witnesses all testified that there was never an acceptance of delivery of the deed, and it no doubt was kept in the personal box of Parks in the company safe; yet the trustees so conducted themselves as to indicate ownership of the property, which conduct was circumstantially at variance with their testimony. The trial court did not make a specific finding on this issue. We think that, under the facts of this particular case, the most that could be said is that such delivery as was accomplished should be designated more as a conditional delivery than any other kind, for by the undisputed facts and inferences of the case the transaction between Parks and the trustees was not to be considered complete until the value of the property was determined. Certainly it required an unconditional delivery to vest title in the trust estate, and whether there ever was such unconditional delivery is a matter of some doubt, in spite of the fact that the trustees appeared to exercise dominion over the property. Let us, however, assume for the present that there was an unconditional delivery, yet it will be seen that due to other considerations the judgment of the trial court was correct.

Thirdly, the plaintiff contends that the trust estate could not divest itself of title to the property by merely redelivering the deed to its grantor. Assuming that this is correct, yet, as stated in Brown v. Brown, 142 Iowa, 125, 120 N. W. 724, where a deed has not been recorded and there is a voluntary surrender of the possession thereof back to the grantor, made with the intention of relinquishing the title conveyed by the deed, and accepted by the grantor as such relinquishment, the grantee is ordinarily estopped from asserting any further right to the instrument, for the grantee has thereby put it out of his power to produce the deed, and the law, at least as between the two of them and in the absence of fraud, will not allow him to introduce secondary evidence in violation of his voluntary undertaking, and to dispute the fair intention of the parties. This must certainly be true, for it is founded upon good common sense, we believe, where, up to the time of the redelivery of the deed, no intervening rights have occurred. Such was the case here. The mortgagee had extended no credit, nor had it in any other manner prejudiced itself by the transaction. In fact it did not even know of it. Parties on both sides consented and agreed to delivering it back, and

since it had not been recorded, and since no party to the instrument was or ever became dissatisfied with such delivery, it is difficult to conceive any good reason why a third party who was in no wise interested in the transaction nor affected by it could raise the question. Were the dispute on this issue between the parties to the conveyance, and at least if there were evidence denying the voluntary nature of the redelivery or asserting the presence of fraud therein, or other legally material objection, a different question would be presented, but under the situation as it exists in this case, we are unable to discover any good reason or legal theory under which the trustees should be held liable. Parks, of course, is liable on account of the fact that he was the original mortgagor, but not by reason of being a trustee.

The theory under which the mortgagee is allowed to obtain personal judgment against a grantee who assumes the debt is either (1) that the contract between the mortgagor and the grantee is one for the benefit of a third party, namely, the mortgagee, or (2) that the mortgagee through the operation of equitable principles is entitled to the benefit of all the collateral securities which his debtor has taken for the mortgage debt, and that the promise of the grantee made to the grantor, or the right to enforce it, should thereby pass over to, and vest in, the mortgagee. Under neither of said theories should the mortgagee prevail in the instant case. Under the first, if the contract between the grantor and the trust estate was one for the benefit of the mortgagee, the fact remains that the contract was not consummated; furthermore, if consummated, it was rescinded before action or change of position by the third party mortgagee. Under the second, the trust estate having surrendered back the deed to the grantor, with his consent, if indeed it could be said that the trust estate had ever accepted the deed in the first place, the said grantor-mortgagor could not enforce the promise of the trust estate to pay the mortgage debt. This is true, if for no other reason, because there was a failure of consideration moving from the trust estate to Parks, in that he was issued no beneficial certificates in exchange for the deed.

However, aside from all of the foregoing, and in addition thereto, there is a counter proposition submitted by the defendants which is decisive of this case, and that is that even assuming that the trust estate agreed to pay the mortgage debt, and further assuming that the deed was delivered, Nevertheless the agreement that the trust estate would pay the mortgage debt was without consideration and also was rescinded. The deed having been returned, and the grantor having accepted it, and all of the parties at that time having consented thereto, there was, first, no consideration or a failure of consideration, for the purported assumption of the mortgage as contained in the trust agreement. An assumption of a mortgage by a purchaser requires a consideration to support it. Ross v. Dexter, 93 Okla. 73, 219 P. 689; Eisenbeis v. Crocker, 99 Okla. 30, 225 P. 510; Beardsley v. Stephens, 134 Okla. 243, 273 P. 240. This consideration may be a reduction in the purchase price, or it may be otherwise. Nevertheless, there must be a consideration. That there was no consideration for such assumption, or that the consideration failed, cannot be doubted.

But does that principle apply against the mortgagee? It does, for under the third party beneficiary theory, it is the general holding of the courts that one who seeks to take advantage of a contract made for his benefit takes it subject to all legal defenses and inherent equities arising out of the contract. In Commonwealth Cotton Oil Co. v. Lester, 156 Okla. 93, 9 P. (2d) 738, we adopted the following from 13 C. J. 699:

" 'One who seeks to take advantage of a contract made for his benefit by another must take it subject to all legal defenses and inherent equities arising out of the contract, such as the fraud of the party procuring it, the nonperformance of conditions, or the right to a set-off, unless the element of estoppel has entered. It is not a defense to an action on a contract made for the benefit of another that such other still retains his original remedy against one of the parties'."

The plaintiff concedes that such a contract of assumption may be rescinded prior to the mortgagee undertaking enforcement of the mortgage in the foreclosure action, and states that the question of rescission is probably the most important point in the case. We see no escape from the conclusion that there was a rescission of the agreement whereunder the trust estate did "agree to assume and pay." The trust estate discovered an additional mortgage of $7,000 against the property, and that the property was not

worth the sum of the liens against it. The trust estate tried but found that it could not go through with the proposed deal. The other party to the agreement, Parks, took back his deed, and "the deal was off." What more complete rescission could there be than the accepting back or the waiving of the various considerations promised by all of the parties, and thereby the satisfaction of all of the parties? Section 9498, O. S. 1931, permits a rescission by consent of the parties. It further permits rescission if the consideration fails in a material respect, from any cause. Those principles should undoubtedly apply where the interests of third parties have not intervened up to the time of the rescission. In the instant case, at the time of the rescission, no detriment or prejudice had accrued to the mortgagee, for the mortgagee had no knowledge of the negotiations. As stated in Biddel v. Brizzolara, 64 Cal. App. 354, 30 P. 609, the mortgagee, being the representative and standing in the place of the mortgagor, to enforce the rights of the latter against the purchaser, and having no greater or other equity in himself, is entitled only to such remedy as the mortgagor himself had when the petition was filed. As stated in the third syllabus of Huffman v. Western Mtg. & Inv. Co., 13 Tex. Civ. App. 169, 36 S. W. 306;

"A mortgagee has no right of action against his mortgagor's vendee, who assumes the debt, but is released before he has been accepted by the mortgagee, or before suit was brought."

In the opinion in that case it is said:

"While there is some diversity of opinion on this proposition, we think the great weight of authority is to the effect that where one assumes the debt of the original promisor, and there is a release by the promisor before there is an acceptance on the part of the creditor, or before suit is brought, then, in that case, the party assuming said indebtedness is released, and the creditor has no right of action against him."

It therefore appears that under the evidence the judgment of the trial court was correct in decreeing foreclosure of the mortgage, and in awarding personal judgment against the defendant Parks and the defendant corporation, and in denying personal judgment against the trustees.

Accordingly, the judgment is affirmed.

OSBORN, C. J., and RILEY, GIBSON, and DAVISON, JJ., concur.