61 So.2d 499 (1952)
ROBERTSON
v.
ROBERTSON et al.
Supreme Court of Florida, en Banc.
October 14, 1952.
*500 Robert C. Lane and Curtiss B. Hamilton, Miami, for appellant.
Marx M. Faber, Miami, for appellees.
ROBERTS, Justice.
This is an appeal from a final decree dismissing the appellant's bill of complaint in proceedings instituted by him in the court below for a declaratory decree, an injunction, and other relief, which suit had for its main purpose the cancellation of certain mortgages held by the appellees Tinter and Porch against the property of the appellant. For a proper consideration of the questions presented on this appeal, it is necessary to set forth in some detail the facts and circumstances culminating in the litigation with which we are here concerned.
The appellant was, on October 13, 1950, the owner of certain property in Dade County, Florida. On that date, his sister, Sarah I. Robertson, forged his name to a deed purporting to convey the property to Sarah I. Robertson. Thereafter, on October 26, 1950, Sarah executed a mortgage on the property to one Homer Kapua to secure a note in the amount of $8,500, which mortgage was assigned by Kapua a few days later to the appellees Tinter for $6,900. Thereafter, on November 7, 1950, Sarah executed a second mortgage on the property to Kapua to secure a note in the amount of $2,000, which mortgage Kapua assigned to the appellees Porch on November 10, for $1,600. All of these transactions were duly recorded in the public records of Dade County, Florida. It should also be here noted that the appellant had himself executed a mortgage on the property some years back to one Perlman, of which there remained due and unpaid $2,000 at the time the Tinters were assigned the first Kapua mortgage, and *501 which Perlman mortgage was paid off out of the $6,900 paid by the Tinters to Kapua.
It appears that Sarah I. Robertson was at the time of the transactions noted above an employee of the City of Miami, and that she had misappropriated certain funds of the city. Some time prior to January 19, 1951, the city discovered the shortage in Sarah's accounts; and, with disclosure imminent, it was decided to disclose to the appellant the fact of the forged deed and mortgages executed by her. At Sarah's request, Kapua made known these facts to the appellant on January 19, 1951. Kapua and the appellant went immediately, on that same day, to the office of the attorney who had represented the Tinters in the mortgage-assignment transaction, and disclosed the fact of the forgery to him. It appears that, in the interest of his clients, the Tinters, this attorney suggested that the appellant execute another conveyance of the property to Sarah, but that, according to the testimony of this attorney, the appellant said that this would not be necessary, as he recognized the deed from himself to Sarah as his own, and that he "didn't want her to get into any more difficulty than she is now in." A deed was then prepared re-conveying the property from Sarah to the appellant and was executed by Sarah. This deed contained a recital that said conveyance was made "subject to existing mortgages of record which the grantee herein assumes and agrees to pay," but was not signed by the appellant.
Thereafter, the appellant made several attempts to obtain re-financing of the mortgages executed by Sarah, but was unable to do so. Kapua had made two payments on the Tinter mortgage and three or four on the Porch mortgage prior to the time that the fact of the forgery was disclosed to appellant, but the appellant made no payments on either of them.
On March 21, 1951, the Tinters filed a suit to foreclose their mortgage, naming as defendants Sarah Robertson, the Porches, and the appellant. The Porches suffered a decree pro confesso to be entered against them, and the appellant and Sarah Robertson, through their attorney, filed a joint answer which was purely formal and did not set up the defense of forgery. An affidavit of the amounts due the Tinters under the note and mortgage being foreclosed was filed by their attorney (not the same attorney as the one who represented them in the mortgage-assignment deal), and the cause was set down for final hearing on June 15, 1951. On that date, the appellant and Sarah filed a motion for leave to file an amended answer, alleging that the attorney previously representing them had withdrawn as counsel, that certain evidence not previously available had been furnished to their present attorney, and that "they have a meritorious defense to interpose in this cause, and that this motion is not made for the purpose of delay." This motion was denied by a notation thereon signed by the Circuit Judge as follows: "Within Motion denied as unsufficient (sic) to warrant delay in proceedings and is denied." Final decree was thereupon entered and Notice of Master's Sale to be held on August 6, 1951, was published.
Thereupon, this suit for a declaratory decree and other relief was filed by the appellant against Sarah Robertson, Homer Kapua, the Tinters and the Porches, setting forth the various transactions referred to above, alleging that Sarah had forged the conveyance to herself from the appellant, that the mortgages executed by her were void, and praying that such deed and mortgages be cancelled and that the court enjoin the Special Master's Sale of the property, as authorized by the final decree in the Tinter's mortgage foreclosure suit. The application for the injunction was denied (by a circuit judge other than the one who had entered the final decree in the mortgage foreclosure suit) on the ground that "this situation can be considered by the court at the time of the application for an order confirming said Master's Sale."
The property was sold at the Master's Sale to the Tinters for the sum of $9,621, and a deficiency decree in the amount of $56.91 was entered against the appellant and Sarah. The Master filed his Report of Sale, and the appellant then filed his "Objections to Master's Report of Sale, *502 and to Confirmation of Master's Sale," in which he alleged the pendency of the instant suit, attached a copy of the bill of complaint therein, and averred that the sale should not be confirmed until after the issues as to the validity of the deed and mortgages were determined in such suit. No order on such objections appears in the record; the court did, however, enter its order confirming the Master's Sale on September 25, 1951, and the appellant appealed from such order and the final decree to this court, assigning as error the orders of the lower court denying appellant's motion for leave to amend his answer, and overruling his "Objections to the Master's Report of Sale, and to Confirmation of Master's Sale." The action of the lower court in these respects was affirmed by this court, Robertson v. Tinter, Fla., 57 So.2d 460, on February 22, 1952, rehearing denied March 25, 1952.
In the meantime, answers had been filed in the instant suit on behalf of the defendants, appellees here, and the cause had proceeded to trial. The appellees Tinter in their answer, as affirmative defenses, alleged that the appellant was "estopped in law and in fact" to maintain the action in that the appellant "consented and acquiesced" to the Tinters' paying off the Perlman mortgage and thereafter made no further payments to the Perlmans; and, also, that the appellant "consented and acquiesced" to the mortgage transaction complained of and was guilty of laches "in that the situation existed from October, 1950 to the time of the institution of this suit without any action by the plaintiff, with full knowledge all during that time of the transaction complained of." It was also alleged that the appellant was further estopped in law and in fact by reason of the fact that he accepted the January 21, 1951, deed from Sarah to himself "subject to existing mortgages of record, which he assumed and agreed to pay, as recited in said deed;" and that the Tinters' mortgage "was of record a long time prior to the execution of this deed and the plaintiff knew or should have known of the transaction of which he now complains."
The cause went to trial on the issues made by the Tinters' answer, the other defendants setting up no affirmative defenses. At the trial, the testimony of the witnesses brought out the facts and circumstances surrounding the transactions heretofore related. The lower court held that the appellant "both by estoppel and res adjudicata, is precluded from now cancelling the mortgages held by defendants Tinter and Porch," and dismissed the appellant's bill. It is this final decree of dismissal which we here review.
At the outset, it should be noted that the lower court erred in holding that the question of the validity of such mortgages is res judicata by virtue of the final decree in the mortgage foreclosure suit. The instant suit is based on an entirely different cause of action, so that the principles of res judicata are not applicable; and the question was not litigated on the mortgage foreclosure suit, so that "estoppel by judgment" does not come into the picture. See Gordon v. Gordon, Fla., 59 So.2d 40, 43, wherein the principles of law relating to "res judicata" and "estoppel by judgment" are clearly and concisely set forth.
Moreover, we have noted in the brief filed in this court by counsel for the appellees Tinter in the appeal on the mortgage foreclosure suit, in opposition to appellant's contention that he should have been allowed to amend his answer therein to set up the defense of forgery, the following statements: "The foreclosure proceedings have been completed, the sale had and confirmed. Appellant had his day in court. His new action [the instant suit] sets up all the equities he could assert in the foreclosure action. If he is successful in his new suit then he will have received all of the relief to which he is entitled and for which he is praying. If he is unsuccessful in the new suit then the matter becomes res adjudicata even though he would be permitted to file an amended answer in the foreclosure, since the same facts are relied upon by him in each instance." (Emphasis is supplied.) And we think it ill becomes the appellees Tinter to now assume *503 an inconsistent position and insist that the question was, at the inception of the instant suit, res judicata.
We come, then, to the question of whether the appellees Tinter have sufficiently proved that the appellant is estopped to contest the validity of the mortgages.
First, was the appellant estopped by the recital in the deed from Sarah to him, that said conveyance was made "subject to existing mortgages of record which the grantee herein assumes and agrees to pay"? We do not think so. As stated in 19 Am.Jur., Estoppel, page 628, Sec. 29: "* * * it is only when a party is claiming title under a deed that he is estopped by its recitals. So, if he buys in an outstanding title, he may show that the grantors in the deed did not have the title and that he holds under a different, paramount title. A party to a deed made to forestall litigation and buy or purchase peace is not estopped to dispute a recital in it of alleged facts." Here, the conveyance was purely a paper transaction, without consideration, which conveyed nothing to the appellant that he did not already have, and made for the sole purpose of correcting the record title to the property. Since the appellant was not claiming under such deed, he should not be estopped by its recitals, under the rule above stated.
We are cognizant of the rule adopted by this court in Brownson v. Hannah, 93 Fla. 223, 111 So. 731, 51 A.L.R. 976, and followed in Ackley v. Noggle, 97 Fla. 640, 121 So. 882, that a grantee in a deed who expressly assumes the payment of prior existing mortgages upon the property, as part of the purchase price for such property, incurs a contractual liability for the debt and becomes the primary obligor of such debt. It has been said that "The relation of the parties, and the nature of the contract, are the same as if the entire consideration had been paid to the grantor, and he had then taken a part of the money sufficient to pay the mortgage, and had intrusted it to the grantee upon his promise to carry it to the mortgagee, and pay it over in satisfaction of the mortgage." Rice v. Sanders, 152 Mass. 108, 24 N.E. 1079, 8 L.R.A. 315. But we do not understand that the liability of a grantee to the mortgagee under an assumption clause may be sustained in the absence of a valid consideration, or when there is a failure of consideration. See Elliott v. Denver Joint Stock Land Bank of Denver, 107 Colo. 231, 110 P.2d 979; Commonwealth Life Ins. Co. v. Eline, 274 Ky. 539, 119 S.W.2d 637; Rochester Sav. Bank v. Stoeltzen & Tapper, 176 Misc. 147, 26 N.Y.S.2d 713; Onondaga County Sav. Bank v. Markson Bros., 182 Misc. 954, 52 N.Y.S.2d 148; and McBirney v. Bader, 181 Okla. 237, 73 P.2d 156. And, certainly, if the appellant were sued by his sister on his contractual liability under the assumption clause, the appellant would have a valid defense to such action, under the circumstances here existing. The deed of reconveyance, containing the assumption clause, was intended to convey nothing to the appellant and was executed solely to right the wrong previously committed against the appellant by his sister; and the fact that the recordation of this deed cleared the record title to the property is not, in our opinion, a sufficient consideration to support a contractual liability under the assumption clause contained therein. And the appellees Tinter can stand in no better position than the mortgagor-grantor.
Second, under the facts and circumstances outlined above, have the appellees Tinter proved an equitable estoppel or estoppel in pais against the appellant?
As stated in 19 Am.Jur., Estoppel, Sec. 34, page 634: "Equitable estoppel or estoppel in pais is the principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon, thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed." We do not think the circumstances *504 here are such as to work an estoppel against the appellant, within the rule stated.
It is essential in proving an estoppel that the party asserting the same show that he relied upon the conduct of his adversary and changed his position in reliance thereon, and that he would consequently be injured by an assertion of the truth or that the other party has benefited by his former position. L.B. Price Mercantile Co. v. Gay, Fla., 44 So.2d 87.
Here, the forged deed had been executed and recorded, and the mortgages executed and recorded, before the appellant learned what had transpired. The damage had already been done, at the time he accepted a reconveyance of the property from his sister. The fact of the forgery was disclosed by the appellant to the Tinters' attorney immediately after he himself learned of it, and we have no doubt that this fact was communicated forthwith by such attorney to the Tinters. While the Tinters may have filed their foreclosure suit relying on the recital in the deed from Sarah to the appellant that the appellant assumed and agreed to pay the mortgages, and the appellant's subsequent attempts to obtain refinancing thereof, on the off-chance that the appellant would not plead the defense of forgery available to him, this is purely suppositional, as the record is devoid of any evidence to this effect. "When a party is to be deprived of his property or his right to maintain an action by an estoppel, the equity ought to be strong and proof clear. * * * `Every estoppel because it concludeth a man to allege the truth must be certain to every intent, and not to be taken by argument or inference.' Coke Litt., 352b." Hooper v. Bail, 133 Me. 412, 179 A. 404, 406. And even if such facts had been proved, it is doubtful that this would be sufficient to work an estoppel against the appellant, but this we do not decide.
We have considered the case of Rothschild v. Title Guarantee & Trust Co., 204 N.Y. 458, 97 N.E. 879, 41 L.R.A.,N.S., 740, relied upon by appellees, and consider that it is distinguishable from the instant case by the facts there involved. Moreover, it was held in the Rothschild case that mere silence or passivity on the part of the person whose name was forged would not work an estoppel against such person.
It must be remembered that, in the instant case, the appellant within the litigating scope of the foreclosure suit sought to interpose his defense of forgery, but was not permitted to do so. While this defense may have been tardily presented, we do not think the appellees Tinter are now in a position to make such a contention, since such would be inconsistent with their statements to this court on the prior appeal, above noted, and it has not been shown that the delay in presenting such defense in the foreclosure suit worked any hardship on the appellees Tinter. The appellant was clearly within his rights in seeking to have an adjudication of his defense of forgery, unless he was estopped to do so, and this the appellees have failed to prove.
The appellees Tinter are entitled, however, to recover from the appellant the moneys paid out by them in his behalf, including the Perlman mortgage, with interest from the date of such payments and the court should so require.
For the reasons stated, the decree appealed from should be and it is hereby reversed and the cause remanded for the entry of a decree consistent with the opinions herein expressed.
Reversed and remanded.
SEBRING, C.J., and TERRELL and MATHEWS, JJ., concur.
THOMAS and HOBSON, JJ., and FUTCH, Associate Justice, dissent.
FUTCH, Associate Justice (dissenting).
I cannot agree with some of the findings reflected by the opinion nor with the conclusions reached.
I think that the expressions and actions of the appellant, Tr. page 6, after he learned of the forgery, are amply sufficient to invoke estoppel. The attorney who represented appellees, when the mortgage was assigned to appellees, evidently thought (as I dare say a vast majority of attorneys have thought and will continue to think unless or until the opinion as prepared in *505 this case by Justice Roberts shall have been published) that the assumption clause contained in the deed of appellant was full recognition of the validity of the mortgage and note, and became the obligation of the appellant. There is a long line of decisions in this State, holding that by the acceptance of a deed wherein it is expressly recited that the grantee agrees to assume and pay off the mortgages, he thereby becomes the primary obligee of the debt. Ackley v. Noggle, 97 Fla. 640, 121 So. 882.
In the case of Brownson v. Hannah, 93 Fla. 223, 111 So. 731, text 734, second column, paragraph 4, 51 A.L.R. 976, this Court said:
"Where a grantee in a deed poll knowingly accepts a deed in which the consideration is expressed as a certain amount, and `other valuable considerations,' and such deed contains a clause that the grantee assumes the payment of a specified mortgage debt upon the land conveyed, he is as effectually bound by said deed as though it was an indenture deed inter partes." (Emphasis is supplied.)
We are not here dealing with a forged note nor a forged mortgage. True, the mortgage was based on forged deeds, but the obligations contained in the mortgage and the note were not forgeries, and were the obligations of the grantor in the deed, which according to the decisions of this Court heretofore made, effectively bound the appellant under the mortgage and note, to the same extent as if the mortgage and note had been originally between him and the appellee. Appellant accepted the deed, and placed it on record. The transactions between appellant and his sister, who had forged his name to the deed, conveying the property to her, was not without consideration. Appellant got his title cleared of the cloud created by this forged instrument, and part of the money represented by the indebtness incurred by his sister, and here involved, was used to pay up appellant's obligations represented by the prior mortgage on the same property, and to finish paying for certain items of personal property in appellant's house. Appellant has not offered to repay one cent even of the money used to pay his personal obligations.
For the reasons stated, the Final Decree herein appealed from should be affirmed.
HOBSON, Justice (dissenting).
Appellant accepted the deed from his sister with full knowledge of the forgery and of the then existing rights of innocent third parties. Why should he not be bound and estopped by the assumption clause in all its stark significance? Although, technically speaking, there was no consideration for the deed it was accepted by appellant for the purpose of keeping his sister from getting "into any more difficulty than she is now in." By his action and conduct appellant recognized the deed from himself to Sarah as his own. Such recognition made reconveyance necessary and appellant with full knowledge accepted the deed containing an assumption clause which made him as between the parties the primary obligor. Under such circumstances, appellant should in equity and good conscience be held estopped from asserting the alleged forgery of his name to the deed as a basis for equitable relief. I would affirm the final decree from which this appeal was prosecuted.
THOMAS, J., concurs.