McCORD, Chief Judge.
This interlocutory appeal is from a judgment permanently enjoining appellee Arlington Plaza, Inc., and appellant Fotomat Corporation of Florida from leasing or con *1215 tinuing to lease or operate the Fotomat store in Arlington Plaza Shopping Center in Jacksonville and canceling the lease. We reverse.
Appellee/defendant Arlington Plaza, Inc., (hereinafter referred to as Arlington Plaza) owns and operates the aforesaid shopping center (hereinafter referred to as the Shopping Center). In October, 1970, Arlington Plaza leased to Shutterbug, Inc., (appellee’s predecessor in interest) a portion of the parking lot in the Shopping Center for use as a drive-up film processing store. The lease, which was unrecorded, contained the following language:
“Lessor agrees not to lease property continguous to the demised premises or otherwise engage in a drive-thru method for selling photographic film, supplies, processing or equipment similar to that of the lessee.”
In 1971, Shutterbug assigned its interest in the lease to appellees/plaintiffs (R. B. Filmes, Inc., and Southland Films, Inc., partners trading and doing business under the partnership name of R. B. Southland Films, hereinafter referred to as South-land).
In August, 1976, Arlington Plaza leased to appellant/defendant Fotomat Corporation of Florida (hereinafter referred to as Fotomat) another potion of the same parking lot some 500 feet away from South-land’s store for use as a drive-up film processing store. The lease entered into between Arlington Plaza and Fotomat did not contain any restrictive covenant but did contain the following language:
“Lessor represents that he is the legal owner ... of the leased premises . and that he has authority to lease the subject premises to the extent of the terms set forth in this lease. Lessor realizes and understands that these representations have been relied upon by Fotomat Corporation as Lessee in executing this Lease.”
By Count I of its amended complaint against Arlington Plaza and Fotomat, Southland seeks an injunction to enjoin both defendants from leasing or continuing to lease or operate the Fotomat store. Count II seeks damages against Arlington Plaza and Count III seeks damages against Fotomat. Count I of Arlington Plaza’s amended cross-claim against Fotomat seéks cancellation or rescission of the Fotomat lease and other relief but does not seek an injunction. Count II thereof seeks damages against Fotomat. Count I of Fotomat’s cross-claim against Arlington Plaza seeks a mandatory injunction to compel Arlington Plaza to specifically perform its obligations under its lease with Fotomat and to enjoin Arlington Plaza from trespassing or otherwise interfering with Fotomat’s quiet enjoyment of its leased property. Counts II, III, IV and V thereof seek damages against Arlington Plaza. Prior to trial, the trial court entered an order of severance by which it severed the issues made by Count I of Southland’s amended complaint and the answers thereto and the issues created by Count I of Fotomat’s cross-claim and the answer thereto and provided that those issues which involved only the respective claims for injunctive relief be tried first before the court without a jury. The order of severance left the remaining issues between the parties to be tried before a jury at a later date to be set by the court. At the conclusion of the trial before the court on the injunctive issues, the court entered judgment enjoining Arlington Plaza and Fotomat from leasing or continuing to lease and from operating the Fotomat store in the Shopping Center and making the following findings:
“1. Arlington is, and has at all times pertinent to this action been, the owner of certain real property in Duval County, Florida, known as the Arlington Plaza Shopping Center.
2. On or about October 10,1970, Arlington and Shutterbug, Inc., entered into a lease agreement dated October 10, 1970, leasing to Shutterbug a portion of the Arlington Plaza Shopping Center. Shutterbug assigned its interest under the lease to Southland on or about March 15, 1971.
*1216 3. At all times material to the matters in controversy, Southland has occupied its leased premises under said lease for the purpose of operating a drive-up-drive-through film processing outlet.
4. On or about August 31, 1976, Arlington and Fotomat Corporation, a Delaware corporation, entered into a lease agreement dated August 81, 1976, leasing to Fotomat a portion of the Arlington Plaza Shopping Center. Fotomat commenced business with the public in the Arlington Plaza Shopping Center pursuant to said .lease on December 29, 1976. With the exception of the period of time during which Fotomat was temporarily enjoined by the Order of this Court dated December 23, 1976, Fotomat has engaged continuously in the business of operating a drive-up-drive-through film processing outlet in the Arlington Plaza Shopping Center similar to the business conducted in said shopping center by Southland. 5. Article X(B) of the Southland lease provides that Arlington, as lessor shall not ‘lease . . . property contiguous to the demised premises or otherwise engage in a drive-through method for selling photographic film, supplies, processing or equipment similar to that of the lessee (Southland).’ The foregoing provision is reasonable under the facts and circumstances and does not constitute an unlawful restraint of trade.
6. The premises leased by Arlington to Fotomat under the lease dated August 31, 1976, are ‘contiguous’ to the premises leased by Arlington to Southland and the business conducted by Fotomat on said leased premises is ‘similar’ to that business conducted by Southland on its leased premises. As such, the Fotomat lease dated August 31,1976, violates the provisions of the Southland lease referred to in Paragraph 5., supra.
7. At the time of negotiating and executing the Fotomat lease, both Fotomat and Arlington were of the single opinion, that the Southland lease did not contain an exclusive covenant. Fotomat knew that Southland occupied a portion of the Arlington Plaza Shopping Center under a written lease. Although a copy of the lease was readily available at the offices of Arlington, Arlington did not refer to the same for the purpose of determining whether or not Southland’s lease contained an exclusive or for any other purpose. The failure of Arlington to refer to the Southland lease was in part induced by representations of Fotomat employees that leases in the ‘photo kiosk-type industry’ are virtually word for word the same, that Fotomat was the ‘leader’ in the industry and that it did not employ an exclusive covenant in its leases, that Fotomat and Southland competed with each other all over the country and that neither employed an exclusive covenant. In this regard Fotomat furnished to Arlington a copy of its lease which did not contain an exclusive covenant. At the time of such conversation Fotomat in fact had no knowledge, one way or the other, as to whether Southland employed a restrictive covenant in its leases. Arlington relied upon such representation and would not have entered into the Fotomat lease but for its belief that the Southland lease did not contain an exclusive.
8. The Fotomat ‘kiosk’ building was delivered by Fotomat to the Arlington Plaza Shopping Center on either December 19 or December 20, 1976. The building was placed on its side in the shopping center. On December 21,1976, Southland telephoned Arlington and advised Arlington that the Southland lease contained an ‘exclusive’ or ‘restrictive covenant’ which prohibited the contemplated lease between Arlington and Fotomat. At the time of this conversation, Fotomat’s prototype building had been unloaded but had not been installed and no permanent work had been commenced for such installation.
9. Immediately following the telephone call from Southland, Arlington reviewed its lease file with Southland and determined that the lease in fact contained an exclusive covenant which purported to prohibit Arlington from entering into the lease with Fotomat. Arlington thereup *1217 on telephoned Fotomat and advised Fotomat that the Southland lease contained an exclusive covenant which purported to prohibit the Arlington/Fotomat lease. At the request of Fotomat, Arlington wrote to Fotomat on December 21, 1976, and enclosed a copy of the Southland lease dated October 10,1970, calling Fotomat’s attention to the exclusive covenant contained in Article X(B) of said lease. In said letter, Arlington again wrote to Fotomat requesting that it suspend any further construction of the Fotomat building in order to keep damages at a minimum. Notwithstanding the request of Arlington, Fotomat continued construction of its building and commenced business with the public in the shopping center on December 29, 1976.
10. By reason of the facts and circumstances above referred to, Fotomat is es-topped to deny prior knowledge of the Southland lease.
11. The provisions of the Southland lease are valid and enforceable; South-land has sustained and will continue to sustain irreparable harm and injury as a result of the Arlington/Fotomat lease; and Southland has no adequate remedy at law.”
Factual findings 1 through 9 quoted above are fully supported by the evidence. As to findings 10 and 11, we agree that the provisions of the Southland lease are valid and enforceable and that Southland has sustained and will continue to sustain injury as a result of the Arlington/Fotomat lease, but we do not agree that the doctrine of equitable estoppel is applicable between Fotomat and Southland. Fotomat’s representations to Arlington Plaza do not form a basis for invoking estoppel in favor of Southland.
As stated by the Supreme Court of the United States in Ketchum v. Duncan, 96 U.S. 659, 24 L.Ed. 868 (1877):
“An estoppel in pais does not operate in favor of everybody. It operates only in favor of a person who has been misled to his injury, and he only can set it up.”
Likewise, the Supreme Court of Florida in Miami Gardens v. Conway, 102 So.2d 622 (Fla.1958), said:
“One of the essential elements of equitable estoppel is that the person who claims the benefit of the doctrine has been influenced or has relied upon the conduct, act or omission to act of the opposing party.”
In discussing equitable estoppel, the Supreme Court in Robertson v. Robertson, 61 So.2d 499 (Fla.1952), quoted from 19 Am. Jur., Estoppel, § 34, as follows:
“Equitable estoppel or estoppel in pais is the principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon, thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.”
It is only a party who has relied on statements made to him who can claim that the speaker is estopped by them. Fotomat made no statements to Southland and Southland in no way relied on the statements of Fotomat to Arlington Plaza. We, therefore, find that the trial court erred in its application of an estoppel and in entering the injunction against Fotomat in favor of Southland.
Appellees’ interpretation of the judgment to the effect that the trial court held on grounds of equity that Fotomat had either constructive knowledge or implied actual knowledge or notice of the restrictive clause in the Southland-Arlington lease and, therefore, could not deny knowledge of it is not a valid consideration in the injunction suit brought by Southland against Fotomat and Arlington Plaza. It will be a proper consideration upon the issues yet to be tried between Arlington Plaza and Fotomat, however.
*1218 We next consider appellant Fotomat’s contention that the trial court erred in cancelling its lease with Arlington Plaza. As we noted above, the trial court, by its severance order, severed the injunctive claims set forth in Count I of Southland’s amended complaint and Count I of Fotomat’s cross-claim from the rest of the pleadings in the case. Arlington Plaza’s amended cross-claim against Fotomat, which constituted a claim for cancellation of the Fotomat lease, was thus preserved for later trial. Appellees argue that the practical effect of the injunction was to cancel the lease. Ruling as we do that the trial court erred in entering the injunction, it follows that the cancellation of the lease at this stage of the proceedings was error.
Reversed and remanded for further proceedings consistent herewith.
BOYER and MILLS, JJ., concur.