524 So.2d 697 (1988)
SUNRISE SAVINGS AND LOAN ASSOCIATION OF FLORIDA, Appellant/Cross Appellee,
v.
Silvio GIANNETTI and Mary Giannetti, Appellees/Cross Appellants, and
Timothy E. Graham and Oceanside Development Corporation, a Florida Corporation, et al., Appellees.
SUNRISE SAVINGS AND LOAN ASSOCIATION OF FLORIDA, Appellant,
v.
Timothy E. GRAHAM and Oceanside Development Corporation, a Florida Corporation, et al., Appellees.
Nos. 4-86-1787, 4-86-2718.
District Court of Appeal of Florida, Fourth District.
April 6, 1988.
Rehearing Denied June 3, 1988.
*698 Larry Klein and Julie Farina of Klein & Beranek, P.A., and Kingcade & Campbell, West Palm Beach, for appellant/cross appellee.
Sally R. Doerner, Scott D. Sheftall and Gary S. Betensky of Floyd Pearson Richman Greer Weil Zack & Brumbaugh, P.A., Miami, for appellees/cross appellants Silvio and Mary Giannetti.
GLICKSTEIN, Judge.
This appeal reviews the trial court's determination of priority, as between two competing mortgages. We appreciate the attention which the trial court gave to the case. Nevertheless, we are compelled to conclude that it misconstrued the legal effect of the evidence; and we hold, on the authority of United Service Corporation v. Vi-An Construction Corp., 77 So.2d 800 (Fla. 1955), and Jones v. Lally, 511 So.2d 1014 (Fla. 2d DCA 1987), that appellant's mortgage was entitled to priority. Accordingly, we reverse the second amended final judgment and final decree of foreclosure.
The facts reflect that appellee Giannetti was victimized by the misconduct of a lawyer, John P. Fitzgerald, who had induced appellee into a joint venture, then had repeatedly misled him as to what was and was not happening. His misconduct included preparation of a satisfaction of mortgage, on which appellee's signature was forged. Appellant relied, to its detriment, on the forged satisfaction.
The circumstances which should have made appellee, a very successful businessman, suspicious and which make him a more blameworthy victim than appellant included the facts that he never was asked for money for payments on the two mortgages except the very first time each fell due, or for contributions to taxes on the partnership property; that for about three months after Fitzgerald told him (after the actual sale) that the property was in process of being sold, and that he would get money after the closing, no money arrived; that when he finally inquired and was told there was no cash, just a note, he did nothing; that when he saw the property and could see the progress already made on the construction project belied the supposed closing time, and someone told him *699 there was a note, he still did nothing; and that he let things drag on for almost a year longer, after learning about three mortgages, two of which were entirely a surprise, and while Fitzgerald avoided him, before hiring counsel to investigate.
The trial court indicated it was perplexed because of the possibility appellee had been negligent, but found appellee had not been negligent to the degree that he would be estopped from asserting his prior claim. It based its conclusion on Northup v. Reese, 68 Fla. 451, 67 So. 136 (1914) ("[A]n unauthorized cancellation on the record of a mortgage does not destroy the lien of the unsatisfied mortgage or affect the rights of a bona fide holder for value who does nothing to mislead or deceive subsequent purchasers or mortgagees."); and Sempf v. Ruhlman, 415 So.2d 759 (Fla. 2d DCA), review denied, 422 So.2d 843 (Fla. 1982) (father who took back a note and mortgage when selling property to his son, who never received any of the monthly payments the son was supposed to make to him, and who had actual knowledge, several months prior to the son's resale of the property, that the son might attempt to forge a satisfaction of the mortgage, but apprised the county clerk of that and was told there would be a legal remedy if it happened, was not negligent and was entitled to reinstatement of his mortgage). It may be surmised that the senior Sempf's notice to the county clerk made the difference in that case. Appellant observes, convincingly, as to Northup, that Northup's result is predicated on the fact that as between the two "innocent" parties the subsequent mortgagee was more at fault. The holder of the cancelled mortgage continued to receive payments on the mortgage, so there was no reason for her to be suspicious, whereas there were signs that should have caused the subsequent mortgagee to be suspicious of the satisfaction of the first mortgage, and should have investigated.
The general rule is that a fraudulent or mistaken satisfaction is undone when no third party has subsequently in good faith acquired an interest in the property, without notice of the fraud or mistake. However, as Sempf shows, such satisfactions have also been undone where an innocent third party has acquired an interest. The key question is, what are the criteria on which such a decision is based.
The Vi-An court quoted older case law, when explaining estoppel in the context of that case, that one who was silent when he had a duty to speak will not be permitted to speak when in justice he should remain silent. Id. at 803-04. The party upon whom the loss was left to fall in Vi-An  the appellant  had a duty to the other innocent party and did not fulfill it. That party was the prior mortgage holder who gave the builder/seller a satisfaction of that mortgage before he paid it the money, knowing that the buyer was paying for the property in full, and when the builder did pay the check bounced  several times. Yet the original lender, which was financing the builder's construction project, never informed the buyer that the former mortgage had not actually been satisfied, and went on to lend the seller more money, knowing full well his financial straits.
Here it appears from the record that appellant had no reason to question the satisfaction of appellee's mortgage, and therefore did rely on it. At trial appellee attempted to argue that this reliance on a public record showing cancellation of a mortgage was itself negligent, and introduced appellant's file connected with its mortgage on the subject property to show also it had not adequately investigated the creditworthiness of Oceanside and its president. We conclude the trial court correctly found that appellant had not been negligent, or at least could have properly found that appellant was less negligent than appellee. Fitzgerald as managing partner and/or agent for Giannetti was reasonably perceived by Sunrise as acting on the "up and up," and reliance on recorded satisfactions absent clues of impropriety is not negligent conduct. It would be incorrect to say that appellee had no duty to appellant nor to anyone else to investigate upon his suspicions, and that even had he learned early on of the forged satisfaction had no duty to rectify the record  not because there were such duties, but because the equitable principle involved does not depend on the tort law definition of negligence.
*700 A United States bankruptcy court has untangled a seeming mess in the area of law respecting reinstatement of mortgages where there have been mistaken or fraudulent satisfactions. The court in Home Savings & Loan Co. v. O'Reilly, 30 B.R. 562 (Bankr.N.D.Ohio 1983), found that the cases fall into four categories, which may be summarized as follows:
1. Where a mortgage has been cancelled by mistake, a subsequent refiling revives the original filing, and its priority, even against an innocent purchaser for value and without notice, who relied on the record. See, e.g., Heyder v. Excelsior Building & Loan Association, 42 N.J. Eq. 403, 8 A. 310, 311 (1887).
2. Where a mortgage has been cancelled because of the fraudulent conduct of an intervening third party, without authority from or consent of the mortgagee, the result is also as above. See, e.g., Zimmer v. Fryer, 190 La. 814, 183 So. 166 (1938).
3. Where the mortgage cancellation is attributable to the mortgagee, who, for example, makes the fraud possible through his negligence, the court will not interfere to protect the mortgagee at the expense of the innocent person deceived by the fraud. See, e.g., Heyder.
4. Where the mortgagor's conduct was responsible for the fraudulent cancellation and the mortgagee was wholly without fault, the release will not affect the mortgagee's rights. E.g., Life Insurance Co. v. Cates, 193 N.C. 456, 137 S.E. 324 (1927).
The above summary of the law is correct for this jurisdiction as well as for most, if not all, other American jurisdictions. The trial court's holding that the appellee had not been negligent to the degree necessary is the essence of our disagreement with its conclusion. Without reciting again all of the clues that appellee was given that there was skullduggery afoot, his failure actively to pursue his belatedly aroused suspicions for more than a year, during which appellant relied on the fraudulent mortgage release and gave its mortgage, made possible the fraud which occurred. Even if it was the mortgagor rather than appellee's partner or agent who perpetrated the forgery, appellee through his carelessness, and/or his partner and lawyer, facilitated the fraud.
It is not the law that only if the mortgagee was himself deceitful or acted fraudulently will the court refuse to reinstate the fraudulently satisfied mortgage. Use, in the equitable principle involved, of the concept "negligence" does not refer narrowly to tort law, with duty to the victim as a necessary element, but refers to lax conduct on the part of one innocent party, but for which the other innocent party would have been protected from the deceit.
Appellee was inattentive, in the extreme, to shenanigans of which there were ample clues; and had he investigated even when his suspicions were finally aroused, rather than more than a year later, the fraudulent satisfaction would have been turned up, the continued existence of the Appellee mortgage would have been apparent, and Sunrise would not have given Oceanside its loan.
We find no merit to the second point on appeal, albeit now moot; and our decision on the issue of priority disposes of appellant's third point in a similarly favorable way. All other issues are rendered moot.
HERSEY, C.J., and LETTS, J., concur.