554 So.2d 1193 (1989)
SOUTHEAST BANK, N.A., and Peoples First Financial Savings and Loan Association, Appellants,
v.
H.P. SAPP, William H. Sapp, and Gene H. Sapp, Appellees.
Jack H. Hutto and Florrie T. Hutto, Appellants,
v.
H.P. Sapp, William H. Sapp, and Gene H. Sapp, Appellees.
Nos. 88-2777, 88-2805.
District Court of Appeal of Florida, First District.
December 13, 1989.
Rehearings Denied February 2, 1990.
*1194 J. Robert Hughes and Timothy J. Sloan of Barron, Redding, Hughes, Fite, Bassett & Fensom, P.A., Panama City, for Southeast Bank, N.A., and Peoples First Financial Savings & Loan Ass'n.
Scott R. Nabors of Hutto, Nabors & Bodiford, Panama City, for Jack H. Hutto and Florrie T. Hutto, appellants.
Richard Smoak and John L. Fishel, II of Sale, Smoak, Harrison, Sale, McCloy & Thompson, Chtd., Panama City, for H.P. Sapp, William H. Sapp and Gene H. Sapp, appellees.
ERVIN, Judge.
The appellants in these two consolidated cases, Southeast Bank, N.A. (Southeast), Peoples First Financial Savings & Loan Association (Peoples), and Jack H. Hutto and Florrie T. Hutto (Huttos), challenge a partial summary judgment order entered against them, which determined that their interests in certain mortgaged property were inferior and subordinate to the interests of the appellees, H.P. Sapp, William H. Sapp, and Gene H. Sapp (Sapps), in the same property. Because appellants' interests are founded upon a void instrument, we affirm the trial court's order.
The facts relevant to this appeal are not disputed. In March 1983 the Sapps contracted to sell a tract of waterfront property to Surfside Resorts, Inc. (Surfside), for the sum of $1,375,000. Surfside agreed to pay a percentage of the purchase price at closing and the unpaid balance was to be repaid in five annual installments, pursuant to the terms of a promissory note secured by a mortgage. The contract provided that the eastern 366 feet of waterfront would be released from the lien at closing and that additional property could be released periodically upon payment of $715 per waterfront foot, plus accrued interest. In June 1983, Surfside assigned its interest in the contract to Mariner's Cove of Panama City Beach, Inc. (Mariner's Cove), a Florida corporation whose sole stockholders were W.L. Hulsey and Raymond Syfrett. The conveyance of the property was completed, and Mariner's Cove executed and delivered to the Sapps the note and mortgage in the amount of $1,150,000.
Pursuant to the terms of the contract, Mariner's Cove paid the 1984 installment and additionally made payment for the release of 354 feet from the mortgage lien. Although payment pursuant to the terms of the note was made in 1985, no payment was made in 1985 for release of additional property from the lien.
In early 1986, William H. Sapp had discussions with Hulsey and Syfrett concerning *1195 the release of additional property from the mortgage lien. The parties were, however, unsure of the actual amounts of monies that would be paid and property that would be released. Consequently, two partial releases were drafted; one releasing 307 feet, and the other releasing 360 feet of waterfront frontage. Each release consisted of a two-page document entitled "Partial Release of Mortgage" that had another page attached to it as "Exhibit `A'," containing a metes and bounds description of the property to be released.
It is apparent from the record that during 1986, Hulsey and Syfrett were having difficulty raising the money necessary for both the annual mortgage payment and the payment for the release of additional property from the lien. However, Syfrett was able to obtain a loan in the amount necessary to make both the 1986 payment and to release 360 feet of water frontage. H.P. Sapp and Syfrett met at First National Bank on July 8, 1986. Syfrett delivered his check to the designated escrow agent, and the release covering 360 feet of the property was then delivered to Syfrett. Syfrett left the bank with the release and returned to his office, which he shares with Hulsey. On July 16, 1986, a partial release of mortgage was recorded releasing 1,360 feet of water frontage  not 360 feet in conformance with the parties' agreement. The first two pages of this release were the same as that executed by the Sapps, however, the metes and bounds description attached as Exhibit A had been altered, reciting that 1,360 feet, rather than 360 feet, were released. Syfrett claims Hulsey recorded the partial release; Hulsey claims he does not know who recorded it. Both men deny that they altered the release.
Subsequently, Mariner's Cove, through Hulsey, conveyed the eastern 360 feet of water frontage to Syfrett, who in turn executed and delivered a note and mortgage to Bay Bank in return for the monies obtained by Syfrett to make the July 1986 payment to the Sapps. Title to this portion of the property is not in dispute.
Mariner's Cove, by deed executed by Hulsey, also conveyed 140 feet out of the 1,360 feet of water frontage to Surfside, a corporation controlled by Hulsey. Surfside in turn mortgaged that property to Southeast. Mariner's Cove likewise conveyed 260 feet out of the 1,360 feet of water frontage to Bay Port, another corporation controlled by Hulsey. Bay Port mortgaged portions of that property to Peoples and to the Huttos. These three mortgages eventually went into default. Southeast and Peoples received certificates of title to the property described under their mortgages as a result of foreclosure proceedings.
Mariner's Cove also defaulted on the Sapp mortgage. The Sapps now seek foreclosure of their mortgage. However, because of the altered release, an insufficient amount of property secures their lien. The Sapps, therefore, assert priority over appellants, because the release was altered. Appellants maintain they have priority, because they are innocent parties who gave value without notice in reliance on the recorded 1,360-foot partial release. All parties filed motions for summary judgment. The trial court determined that the Sapps had priority and therefore granted their motion for summary judgment and denied appellants' motions. Hence, these appeals.
Appellants first contend that the trial court erred by granting the partial summary judgment in appellees' favor. We disagree. The parties do not dispute that the 1,360-foot partial release is a forged instrument.[1] The law regarding forged documents is well established: they are void and the recording of a void or forged instrument is legally insufficient to convey notice or afford protection to those claiming title thereunder.[2]McCoy v. Love, *1196 382 So.2d 647, 648 (Fla. 1979); Wright v. Blocker, 144 Fla. 428, 432, 198 So. 88, 90 (1940) (citing 2 R. Devlin, The Law of Real Property & Deeds, § 726, at 1347-49 (3d ed. 1911), and 5 Thompson, Commentaries of the Modern Law of Real Property, § 4025, at 13 (1924)). Applying this law to the instant case, it is apparent that appellants' interests rest upon a forged instrument, a document that provides them with no protection as against the Sapps. Consequently, summary judgment was appropriate.
Appellants' second point on appeal challenges the trial court's granting of appellees' motion for summary judgment based upon affidavits which were timely served in opposition to appellants' motions, but which were allegedly untimely filed in support of their own motion. See Fla.R. Civ.P. 1.510(c). Provided the law and facts support such a ruling, a trial court may properly enter summary judgment in favor of the party opposing the motion, even in the absence of a cross-motion for summary judgment. See 30A Fla. Stat. Ann. 386 (1985) (Author's Comment); Carpineta v. Shields, 70 So.2d 573 (Fla. 1954); John K. Brennan Co. v. Central Bank & Trust Co., 164 So.2d 525 (Fla. 2d DCA 1964).
Finally, appellants contend that the trial court erred by refusing to consider affidavits supporting their summary judgment motions, which were submitted with their motions for rehearing. It is not an abuse of discretion for a trial court to refuse to admit affidavits filed with a motion for rehearing concerning a prior summary judgment ruling. Maddox v. Tallahassee Memorial Regional Medical Center, 438 So.2d 1041 (Fla. 1st DCA 1983); Coffman Realty, Inc. v. Tosohatchee Game Preserve, Inc., 381 So.2d 1164 (Fla. 5th DCA 1980), approved, 413 So.2d 1 (Fla. 1982).
We conclude that the trial court correctly entered summary judgment in favor of the appellees, because appellants' interests were based upon a forged instrument that afforded them no protection. Additionally, the trial court did not err by relying on appellees' affidavits when it entered summary judgment in their favor, nor by refusing to consider affidavits submitted with appellants' motions for rehearing.
AFFIRMED.
WENTWORTH and ZEHMER, JJ., concur.
NOTES
[1] A forged instrument is one that has been fabricated or falsely made or one in which a material alteration has been made with intent to defraud. Wright v. Blocker, 144 Fla. 428, 432, 198 So. 88, 90 (1940) (citing 16 Am.Jur. Deeds §§ 26-28, at 451-52 (1938)).
[2] Contrary to the established law regarding forged instruments, appellants argue, based upon Sunrise Savs. & Loan Ass'n of Fla. v. Giannetti, 524 So.2d 697 (Fla. 4th DCA), appeal dismissed, 534 So.2d 399 (Fla. 1988), that the court must balance the equities between the innocent appellants and the negligent appellees, with the result being that appellants' liens would have priority over that of appellees. We find this argument unconvincing for several reasons. First, we note that no mention is made in Giannetti regarding the law pertaining to forged instruments. Second, the forgery in Giannetti was procured by the first mortgagee's business partner, thus agency considerations came into play. In the instant case, none of the appellees/first mortgagees procured the forgery. Third, even if one were to consider negligence in this case, appellees' giving of the partial release to the mortgagor rather than recording it is not equivalent to the negligent acts in Giannetti.