liGASKINS, Judge.
This child custody suit concerns the joint custody plan for a four-year-old boy whose father is deceased and whose mother’s whereabouts are unknown. The paternal grandmother appeals from the trial court’s designation of the maternal great-aunt as the domiciliary custodian. We affirm.
The child, Steven Zachery King, was born July 12, 1993, the son of Chuck King and Misty Smith. The appellant, Wilma Yvonne Stephens, is the mother of Chuck King, who committed suicide in November 1993. The appellee, Gloria Guerrero, is the maternal aunt of Misty Smith, whose whereabouts were unknown at the time of trial.
Following the death of the child’s father, the mother had custody of the child. In August 1994, the Department of Social Services (DSS) removed the child from her custody and placed him in foster care. DSS’ goal was to ultimately reunite him with his mother once she had been successfully rehabilitated. In January 1995, he was placed in the home of the paternal grandmother, where he remained until July 1995. At that point, he was returned to his mother’s custody. At about the same time, the paternal grandmother filed suit against the mother seeking custody of the child.
In October 1995, DSS again found it necessary to remove the child from his mother’s custody and place him in foster care. Due to the paternal grandmother’s great hostility to the child’s mother and in view of the ultimate goal of reuniting parent and child, DSS elected not to place him with the paternal grandmother. Instead, he was placed with the maternal great-aunt and her family.[1]
In January 1996, joint custody of the child was awarded to the paternal grandmother and the great-aunt, with actual custody to be shared equally. To thisjjend, they alternated custody on a weekly basis. In March 1996, the paternal grandmother sued the great-aunt for sole custody.
*945 Trial was held in November 1996 and January 1997. The trial court awarded joint custody with the great-aunt being designated as domiciliary custodian. The court found that the great-aunt’s home would provide the child with “a wholesome and stable environment” and would be in his best interest. In written reasons for judgment, the court noted that the great-aunt and her husband were a younger couple with “more energy” to care for the child throughout childhood, adolescence and into young adulthood.[2] The court was favorably impressed with their home life, which included rearing children of their own, who were 14 and 16 at time of trial. In view of the great love between the grandmother and the child, the court found that joint custody with liberal visitation for the grandmother would be appropriate. She was granted alternate weekends, alternate major holidays with timesharing at Thanksgiving and Christmas, and two weeks each month during the summer.
The paternal grandmother appeals. She contends that the trial court committed manifest error in designating the great-aunt as domiciliary custodian.
The paramount consideration in a custody case is always the best interest of the child. La.C.C. art. 134. In determining the best interest of the child in a custody ease, there must be a weighing and balancing of factors favoring or opposing custody in the respective competing custodians on the basis of the evidence presented in each particular case. Warlick v. Warlick, 27,389 (La.App.2d Cir. 9/29/95), 661 So.2d 706. La.C.C. art. 134 enumerates twelve nonexclusive factors relevant in determining the best interest of the child.
|3The trial court’s determination is to be given great weight and will be overturned only when there is a clear abuse of discretion. Warlick, supra.
Our review of the record reveals no clear abuse of discretion. The record amply demonstrates that both the paternal grandmother and the maternal great-aunt are devoted to and love this child. Both were eager to welcome him into their homes and to provide him with a loving environment. The trial court carefully weighed the relevant factors and properly determined that the best interest of this young child would be served by placing him with the great-aunt. The great-aunt and her husband are, in the words of the trial court, “hard working, morally upright people, who have stressed proper goals and values to their children, and this is evident in their children.” Their elder son, an honor student, testified impressively at trial. Placement of the child with this family gives him the advantage of a stable and loving two-parent household with two older “brothers.” The great-aunt’s husband is already a father figure to this young child, a fact which is of great benefit to him.
The paternal grandmother argues that, as a single parent with no other children to care for, she can give the child more attention than the great-aunt, who has a husband and two children of her own. She also contends that she is more willing and able to facilitate relationships—and occasional visits—with two of the child’s four half-siblings.[3] However, these arguments ignore the reality that, as part of the great-aunt’s household, the child has several family members who can look after him, and with whom he can interact, on a daily basis. Further, the | /(grandmother’s work schedule is such that she frequently arrives home at 7:00 p.m. or later, while the great-aunt works, at most, two days a week.
We find that the trial court did not commit manifest error in its designation of the maternal great-aunt as the domiciliary custodian. Accordingly, we affirm the judgment of *946 the trial court. Costs are assessed against the appellant.
AFFIRMED.

. Eventually, the goal of reunification was abandoned after the mother indicated that she wanted the great-aunt to receive custody of the child.

. At trial, the ages of the great-aunt and her husband were, respectively, 36 and 40. The paternal grandmother was 53 years old.

. The child’s mother has another son and a daughter, each with different fathers, both of whom live with their respective paternal families. The paternal grandmother has forged ties with the paternal grandmothers of these other two children; apparently, they are united in their disdain for the mother and her family. They try to arrange for these three children to visit each other at least once per month. Additionally, the child’s father had two sons from a prior marriage, but the paternal grandmother has no contact with them.