786 So.2d 65 (2001)
Klaus ZURSTRASSEN, Appellant,
v.
David STONIER, Edward Wihlborg and Diane Wihlborg, Appellees.
No. 4D00-294.
District Court of Appeal of Florida, Fourth District.
May 16, 2001.
*67 Wayde P. Seidensticker, Jr. and Katy L. Koestner of Seidensticker & San Filippo, LLP, Naples, and Cohen, Conway, Copeland & Paiva, P.A., Stuart, for appellant.
Matthew G. Brenner of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for appellees-Edward Wihlborg and Diane Wihlborg.
WARNER, C.J.
The trial court entered summary judgment in this suit to quiet title, finding that appellant waived the right and/or was estopped from asserting the forgery of his signature on a deed conveying the property to his brother. It further found that appellant ratified his brother's subsequent sale of the property. Because we conclude material issues of fact remain, we reverse.
Appellant, Klaus Zurstrassen, a citizen of Germany, and his brother, Rolf, a citizen of the United States, acquired title to two vacant lots in Indian River County in June 1997. The brothers intended to build on the lots and then sell them. On September 10, 1997, Klaus returned to Germany, leaving Rolf in charge of commencing construction. While construction commenced on one lot, a deed was recorded in the public records on September 25, 1997, purportedly conveying Klaus's ownership in the lots to his brother Rolf. Klaus claims that the deed was a forgery and that he had no knowledge of it.
Klaus returned from Germany in October, and construction on the one lot continued. Just before Klaus left again for Germany, the brothers agreed to sell the constructed home. Klaus met with a realtor to prepare a listing. The realtor researched the title and informed Klaus that his name did not appear on the last deed in the chain of title. He was not shown any deed and did not know that title was vested in his brother's name alone. Klaus asked Rolf about it, and Rolf told Klaus that he did not know why Klaus's name did not appear on the deed but that he should not be concerned with it. Because of the uncertainty created by the revelation of some title problems and the necessity of Klaus to return to Germany, the brothers signed a document between them recognizing Klaus's interest and the terms of the brothers' initial agreement regarding the properties.[1] The agreement stated that title to the properties was in Rolf's name alone and it outlined the process of selling the properties and distributing the proceeds. Klaus then returned to Germany.
In June of 1998, Rolf transferred both lots to David Stonier by quitclaim deed. Stonier was unaware that Klaus made any claim to the property. Then in August of 1998, Stonier executed a warranty deed on one lot to the Wihlborgs. The deed to the Wihlborgs was mistakenly recorded in Brevard County and was not recorded in Indian River County until November 23, 1998.
While in Germany, Klaus was notified that the lots had been sold. However, when he returned to the United States, he immediately began investigating the title to the property and uncovered the forged deed and the subsequent deeds. He instituted suit to quiet title to the property and for rescission on November 9, 1998, and filed a notice of lis pendens on November 10, 1998, thirteen days before the Wihlborg deed was recorded in Indian River County. Both Stonier and the Wihlborgs *68 answered the suit and claimed that Klaus was estopped from asserting any rights because he had acknowledged in the February 1998 agreement that title to the property was in his brother's name and he had delayed in objecting to any purported fraud. Stonier also alleged that he was a bona fide purchaser for value and filed a counterclaim for slander of title and damages.
Stonier and the Wihlborgs moved for summary judgment and conceded for purposes of the motion only that Klaus's deed to Rolf was a forgery. The trial court entered summary judgment in their favor on the quiet title and rescission claims, concluding that because Klaus was aware as of February 1998 that the property was titled solely in Rolf's name and failed to object, Klaus had waived or was estopped from asserting any right to object to any subsequent sale to Stonier. This appeal ensued.

Equitable Estoppel:
We think Klaus is correct in his assertion that the forged deed is void and thus creates no legal title nor affords protection to those claiming under it. See McCoy v. Love, 382 So.2d 647, 648 (Fla. 1979); Lloyd v. Chicago Title Ins. Co., 576 So.2d 310, 311 (Fla. 3d DCA 1990). See also Jamnadas v. Singh, 731 So.2d 69, 70 (Fla. 5th DCA 1999)(forged mortgage is void and a legal nullity); Southeast Bank, N.A. v. Sapp, 554 So.2d 1193, 1195 (Fla. 1st DCA 1989)(same). In Wright v. Blocker, 144 Fla. 428, 198 So. 88 (1940), relied on in McCoy, the court said of the effect of such deeds, "`[a] forged deed, in the sense defined above, is absolutely void and wholly ineffectual to pass title, even to a subsequent innocent purchaser from the grantee under such forged deed.'" Id. at 91 (quoting 16 Am Jur. 451-2).
Appellees rely on Sunrise Savings and Loan Ass'n of Florida v. Giannetti, 524 So.2d 697 (Fla. 4th DCA 1988). In Giannetti, a person forged Giannetti's signature on a satisfaction of mortgage which was relied upon to the detriment of Sunrise Savings and Loan which made a subsequent loan believing it to have priority. This court held that because Giannetti was negligent in not discovering the forged satisfaction of mortgage, as between two "innocent" parties, Giannetti was more blameworthy and therefore should suffer the loss. This court relied on two cases, United Service Corp. v. Vi-An Construction Corp., 77 So.2d 800 (Fla.1955), and Jones v. Lally, 511 So.2d 1014 (Fla. 2d DCA 1987). However, neither Vi-An nor Jones involved a forgery. As McCoy pointed out, where fraud in the inducement is present, a deed may be voidable in equity, but it can still convey title. 382 So.2d at 649. Giannetti was criticized in Sapp which pointed out that the opinion gave no consideration to the law regarding forged instruments. See Sapp, 554 So.2d at 1196. Giannetti, however, relies on estoppel arguments to reach its result. As we hereinafter explain, equitable estoppel principles apply, even to void deeds. Thus, Giannetti is not inconsistent with McCoy, Lloyd, and Jamnadas.
Because the deed conveying title from Klaus to Rolf is void, it had no legal effect to transfer Klaus's ownership of the property to Rolf. Nevertheless, appellees still argue that Klaus should be estopped from asserting his claim that the deed was a forgery because of his subsequent knowledge of the forgery. The elements of estoppel are: (1) representation of a material fact by the party estopped to the party claiming the estoppel that is contrary to the fact later asserted by the estopped party; (2) reliance on that representation by the party claiming the estoppel; and (3) the party claiming the estoppel detrimentally changed their position due to such *69 reliance. See Jewett v. Leisinger, 655 So.2d 1210, 1212 (Fla. 4th DCA 1995). In the context of title to disputed land, estoppel prevents a party who by acts, words, or silence allows another to purchase title to property "under an erroneous opinion of title, without making known his claim," from afterwards exercising his or her legal right against such person. Coram v. Palmer, 63 Fla. 116, 58 So. 721, 722 (1912).
Robertson v. Robertson, 61 So.2d 499 (Fla.1952), suggests that in certain circumstances a party may assert equitable estoppel against a claim that conveyances are void as a result of forgery. In Robertson, a sister forged her brother's name to a deed purporting to convey the property to her. She then executed several mortgages on the property to obtain funds. After the sister encountered other problems, one of the mortgagees disclosed the forged deed to the brother at the sister's request. The sister then executed a conveyance back to the brother. The deed recited that it was subject to the mortgages. Upon later foreclosure by one of the mortgagees, the brother filed an action for declaratory and other relief on the ground that the mortgage was based upon the forged deed. The mortgagee asserted that the brother was equitably estopped to assert the forgery. In ruling in favor of the brother, the court said:
As stated in 19 Am.Jur., Estoppel, Sec. 34, page 634: "Equitable estoppel or estoppel in pais is the principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon, thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed." We do not think the circumstances here are such as to work an estoppel against the appellant, within the rule stated.

It is essential in proving an estoppel that the party asserting the same show that he relied upon the conduct of his adversary and changed his position in reliance thereon, and that he would consequently be injured by an assertion of the truth or that the other party has benefited by his former position. L.B. Price Mercantile Co. v. Gay, Fla., 44 So.2d 87 [1950].
Here, the forged deed had been executed and recorded, and the mortgages executed and recorded, before the appellant learned what had transpired. The damage had already been done, at the time he accepted a reconveyance of the property from his sister. The fact of the forgery was disclosed by the appellant to the Tinters' attorney immediately after he himself learned of it, and we have no doubt that this fact was communicated forthwith by such attorney to the Tinters. While the Tinters may have filed their foreclosure suit relying on the recital in the deed from Sarah to the appellant that the appellant assumed and agreed to pay the mortgages, and the appellant's subsequent attempts to obtain refinancing thereof, on the off-chance that the appellant would not plead the defense of forgery available to him, this is purely suppositional, as the record is devoid of any evidence to this effect. "When a party is to be deprived of his property or his right to maintain an action by an estoppel, the equity ought to be strong and proof clear ...." *70 Hooper v. Bail, 133 Me. 412, 179 A. 404, 406.
Id. at 503-04 (underlined emphasis added). Further, only a party who relied on statements made to that party can claim that the speaker is estopped by those statements. See Fotomat Corp. of Fla. v. R.B. Films, Inc., 366 So.2d 1213, 1217 (Fla. 1st DCA 1979).
In the instant case, there were no representations by Klaus to either purchaser of the lots. Indeed, it does not appear that either Stonier or the Wihlborgs had any knowledge of the paper signed by both brothers which explained that title was in Rolf's name but both brothers would share in the profits.[2] Moreover, there is no evidence of record that Klaus knew at the time he signed that paper that his signature had been forged onto a deed conveying his interest to his brother. Cf. First S. Ins. Co. v. Ocean State Bank, 562 So.2d 798, 800 (Fla. 1st DCA 1990) (if owner knowingly cloaks another with indicia of ownership or authority, doctrine of estoppel precludes owner from complaining when a third party relies on representation to his detriment; but estoppel does not apply where indicia of ownership is not knowingly given by true owner, such as in case of forgery). All he knew as he was leaving for Germany was that the realtor reported that his name was not on the title, but he did not know the reason or the legal ramifications. In sum, there were material issues of fact regarding the defenses of equitable estoppel raised by both Stonier and the Wihlborgs.

Waiver:
Likewise, there are issues of fact as to whether Klaus waived his right to contest the forged deed. "The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." Leonardo v. State Farm Fire & Cas. Co., 675 So.2d 176, 178 (Fla. 4th DCA 1996). A waiving party must possess all of the material facts in order to constitute waiver. See Wilds v. Permenter, 228 So.2d 408, 410 (Fla. 4th DCA 1969). Waiver of fraud can occur where a party should have discovered the fraud through ordinary diligence. See Hurner v. Mut. Bankers Corp., 140 Fla. 435, 191 So. 831, 833 (1939).
Waiver may be implied by conduct, but that conduct must be clear. See Am. Somax Ventures v. Touma, 547 So.2d 1266, 1268 (Fla. 4th DCA 1989). Thus, while forbearance for a reasonable time alone cannot constitute waiver, see id. at 1268, conduct leading one to believe that a right has been waived may imply such a waiver. See Arbogast v. Bryan, 393 So.2d 606, 608 (Fla. 4th DCA 1981) (quoting 22 Fla. Jur.2d, Estoppel & Waiver § 89) (parties' failure to timely speak out and enforce a claim to commissions due from a transaction constituted waiver).
At the least, there is a question of fact as to whether Klaus acted diligently in discovering the forgery. Although he had been told the property was titled solely in Rolf's name, Rolf repeatedly assured him *71 that he should not be concerned with title problems. Klaus had to leave for Germany immediately after learning that his name was not on the title. He began investigating the title immediately upon his return. Whether he should have started investigating earlier is a question of fact.

Ratification:
Because Klaus did not know of the forgery, we also conclude that the court erred in granting summary judgment on the issue of ratification of the fraud. Ratification occurs where a party with full knowledge of all the material facts makes an affirmative showing of his or her express or implied intention to adopt an act or contract entered into without authority. See Deutsche Credit Corp. v. Peninger, 603 So.2d 57, 58 (Fla. 5th DCA 1992). The issue is one of fact. Id. at 58-59. If a party knows of a fraud, does not reject it, and takes any material act inconsistent with an intent to avoid it or delays in asserting any remedial rights, then that party ratifies the fraud. See Ball v. Ball, 160 Fla. 601, 36 So.2d 172, 177 (1948). However, in the instant case, there is no evidence that Klaus knew of the forgery so as to reject it. Even though he signed the paper acknowledging that title was in Rolf's name and authorizing Rolf to sell the property, Rolf led him to believe that the title problems were a mix up and not the true state of ownership of the property. On this record, material issues of fact remain as to the issue of ratification.
For the foregoing reasons, we reverse and remand for further proceedings.
DELL and HAZOURI, JJ., concur.
NOTES
[1] Klaus was required to leave the United States because of the expiration of his six month visa.
[2] Stonier's claim that Rolf had good and valid title to the property is further belied to some extent by the fact that Rolf conveyed the property to Stonier by quitclaim deed. A quitclaim deed conveys whatever title the grantor has, if any. See Blitch v. Sapp, 142 Fla. 166, 194 So. 328, 330 (1940). A quitclaim deed provides no warranties of the validity of title. See Goldtrap v. Bryan, 77 So.2d 446, 448 (Fla.1954). Therefore it is hard to say as a matter of law that Stonier could have relied on the validity of title conveyed through a quitclaim deed.