2016-453 (La.App. 5 Cir. 12/7/16)

**IN RE: J. J. BEN**

**and**

**J. J. Ben**

**NO. 2016–CA–453**

Court of Appeal of Louisiana, Fifth Circuit.

December 7, 2016

COUNSEL FOR PLAINTIFF/APPEL-LANT, RUDOLPH SANCHEZ, Nghana L. Gauff

COUNSEL FOR DEFENDANT/AP-PELLEE, RHONDA F. ETIENNE AND YVONNE W. BEN, Renee L. Swanson

Panel composed of Susan M. Chehardy, Stephen J. Windhorst, and Hans J. Liljeberg

LILJEBERG, J.

Appellant, Rudolph Sanchez, appeals the trial court's May 20, 2016 judgment, which denied his petition for custody of his minor stepsons, J.J. Ben and J.J. Ben. In

its judgment, the trial court awarded joint custody to the minors' maternal grandmother, Rhonda Etienne, and paternal grandmother, Yvonne W. Ben. For the reasons stated more fully below, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

The minors at the center of this custody dispute are twin boys born on September 27, 2001. Their mother, D'Vondriya Etienne Sanchez, was married to Mr. Sanchez and passed away suddenly from an undiagnosed heart condition on December 9, 2014. The twins' biological father, Wesley Jarrod Ben, Sr., died on February 20, 2003, when they were less than two years old.

Following the untimely death of his wife, Mr. Sanchez filed a Petition for Custody on April 13, 2015, seeking to establish custody of the twins. On April 27, 2015, the trial court entered an interim order awarding Mr. Sanchez temporary sole custody. The trial court also granted alternating weekend visitation to the children's grandmothers, Ms. Etienne and Ms. Ben. On May 19, 2015, Ms. Etienne and Ms. Ben filed a joint petition of intervention seeking sole custody of the twins.

The trial court set the custody petitions for hearing on August 21, 2015. On the morning of the hearing, Ms. Ben and Ms. Etienne reported that they could not proceed because their attorney was in the hospital. Mr. Sanchez's counsel objected to a continuance because D'Vondriya Sanchez's succession proceeding was on hold pending a final custody determination for the twins. The trial court indicated that it did not want to delay the succession proceedings, but also wanted Ms. Ben and Ms. Etienne to have their day in court. Therefore, the trial court decided to change the

interim order granting Mr. Sanchez temporary sole custody to a |₂"Judgment of the Court" and also granted Ms. Ben and Ms. Etienne a continuance without prejudice to their right to a hearing on their petition seeking sole custody. On September 2, 2015, the trial court signed a written judgment stating that it "awarded custody" to Mr. Sanchez. The judgment further provided that the hearing on Ms. Etienne's and Ms. Ben's petition for intervention was continued without date and without prejudice.

Trial on the merits of the custody petitions occurred on February 25, 2016 and March 11, 2016. The testimony revealed that Mr. Sanchez and D'Vondriya first met in 2003 when the twins were approximately three years old. After Hurricane Katrina, D'Vondriya and the twins, along with Ms. Etienne, moved into an apartment in Laplace, Louisiana, and later moved into a house with Mr. Sanchez. In July 2007, D'Vondriya and Mr. Sanchez purchased a home located at 130 Panther Run in Destrehan, Louisiana.[1] Mr. Sanchez and D'Vondriya married on November 30, 2007, and share one biological son together, who was six years old at the time of the trial. Mr. Sanchez also has two children, a son and a daughter from a prior relationship, who lived with them in Destrehan.

Mr. Sanchez is employed as a site manager for Triad Electrical and Controls, and also owns his own janitorial business. The parties agree that Mr. Sanchez has been a part of the twins' lives since they were very young and helped support and raise them. The twins have lived and attended school in Destrehan since 2007. They went on family vacations with Mr. Sanchez, their mother and the other three children

---

1. Ms. Etienne did not live with D'Vondriya and Mr. Sanchez on a full time basis when they moved to 130 Panther Run. However, as

discussed more fully below, Ms. Etienne often stayed with them for several days during the week to help care for their children.

every year. Mr. Sanchez testified that he considers the twins as his own children. After D'Vondriya's death, Mr. Sanchez provided the twins with grief counseling, medical insurance and life insurance. He also obtained private tutoring for the twins twice a week to help them try to improve their school grades.[2]

Mr. Sanchez agreed that Ms. Etienne frequently stayed at their home in Destrehan to help care for the children during the week while he and D'Vondriya worked.[3] In addition, Ms. Etienne brought the children to her home in Braithwaite, Louisiana, on certain weekends. After D'Vondriya died in December 2014, Ms. Etienne lived in Destrehan for approximately four months to help take care of the children. Mr. Sanchez agreed the twins have a close and loving relationship with Ms. Etienne. Unfortunately, the relationship between Mr. Sanchez and Ms. Etienne deteriorated after Ms. Etienne applied to be the payee to receive social security benefits on behalf of the twins in March 2015. Ms. Etienne testified that she was no longer welcome in Mr. Sanchez's home.

The trial court also heard testimony from the twins' paternal grandmother, Yvonne W. Ben. Ms. Ben resides in Violet, Louisiana and is an educator with forty years of experience. She is employed by the St. Bernard Parish School Board as an education diagnostician assisting children with special needs. Ms. Ben testified that shortly after her son's death in 2003, the twins and D'Vondriya lived with her for approximately six or seven months. She testified that since the trial court granted her visitation, she visits with the twins on weekends. She also picks them up from school in Destrehan and brings them to Ms. Etienne. Ms. Ben testified that she established savings accounts for the twins when they were born and has college funds for them. She also purchased a life insurance policy for the twins in 2015.

At the time of the trial, the twins were fourteen years old and in eighth grade at Harry Hurst Middle School in Destrehan. The parties all agreed that the twins were performing very poorly in school despite the private tutoring they were receiving. At trial, the twins claimed they did not have a good relationship with Mr. Sanchez and wished to live with their grandmothers. They testified Mr. Sanchez did not help them with their school work before their mother died. They claimed he was often angry with them for not helping around the house. One of the twins testified that Mr. Sanchez cooked and cleaned nearly every weekend and expected them to assist in keeping the house clean. Both of the boys claimed Mr. Sanchez whipped them when they were younger and that he punched each of them once when he was angry. When asked why they did not want to live with Mr. Sanchez, one of the twins stated that though Mr. Sanchez now told them that he loved them, he never said these things before their mother died.

The trial court took the matter under submission and the parties submitted post-trial briefs. In their briefs, both sides agreed the trial court was required to consider the best interest of the children in rendering its custody determination. On May 20, 2016, the trial court issued a judgment awarding Ms. Ben and Ms. Etienne joint custody of the twins. The trial court also named Ms. Ben as tutrix for the children's financial matters and named Ms. Etienne as undertutrix. The trial court

---

**2.** The parties agreed that the twins struggled in school even prior to their mother's death.

**3.** At some point, Mr. Sanchez and D'Vondriya began compensating Ms. Etienne for the time she spent caring for the children.

explained in its reasons for judgment that it did not order visitation for Mr. Sanchez because neither side prayed for it in their petitions, but encouraged the twins to visit with Mr. Sanchez on a regular basis.

On May 31, 2016, Mr. Sanchez filed a notice of appeal, which the trial court granted on June 1, 2016.

## DISCUSSION

In his second assignment of error, Mr. Sanchez argues for the first time on appeal that the trial court employed the wrong legal standard in reaching its |₅custody determination.[4] Mr. Sanchez contends the trial court erred by failing to award him joint custody of the twins because it previously awarded him custody in the August 21, 2015 judgment. Mr. Sanchez argues the trial court should have required Ms. Ben and Ms. Etienne to prove that awarding custody to him would result in substantial harm to the children. In support of his argument, Mr. Sanchez cites to *Mills v. Wilkerson*, 34,694 (La. App. 2 Cir. 3/26/01), 785 So.2d 69, 73, which held that in order to modify a prior non-considered custody decree between a parent and nonparent, the nonparent must prove that awarding custody to the parent would result in substantial harm to the child.

The standard applied in *Mills* is inapplicable in the present matter because Mr. Sanchez is not a biological or adoptive parent of the twins. This matter involves a custody dispute between nonparents. Furthermore, though the trial court awarded Mr. Sanchez custody of the twins in the August 21, 2015 judgment, the trial court indicated that this judgment was entered without prejudice to Ms. Ben's and Ms. Etienne's petition seeking sole custody of the twins.

This brings us to Mr. Sanchez's first assignment of error, in which he argues the trial court erred by placing too much emphasis on the children's preference in awarding Ms. Etienne and Ms. Ben joint custody of the twins. He argues the trial court ignored testimony showing the twins lacked the discipline, understanding and maturity needed to express a preference in their best interest. He claims the twins' testimony established that their source of frustration with him arose out of their dislike of the discipline he imposes on them and expects of all of his children. He also notes the twins could not identify more than one occasion when they were allegedly whipped, and neither Ms. Ben nor Ms. Etienne testified that they were ever made aware of any whippings or other physical discipline of the twins by Mr. Sanchez.

|₆Every child custody case must be decided in view of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the child. *Coleman v. Manley*, 15–778 (La.App. 5 Cir. 3/16/16), 188 So.3d 395, 399, *writ denied*, 16–688 (La. 5/13/16), 191 So.3d 1057. On appellate review, the determination of the trial court in establishing custody is entitled to great weight and will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Id.* at 399–400.

In cases where a child's biological parents are deceased, courts have employed the best interest of the child standard to award custody between two nonparents. *In re M.S.E.*, 12–553 (La.App. 5 Cir. 3/13/13), 113 So.3d 327, 338; *Stephens v. Smith*, 30,028 (La.App. 2 Cir. 12/10/97), 704 So.2d 943, 945. La. C.C. art. 134 provides that in awarding custody, the court shall consider

4. As noted above, in his post-trial memorandum submitted to the trial court, Mr. Sanchez argued the best interest of the child standard applied.

all relevant factors in determining the best interest of the child, including:

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in Article 134; rather, the court should decide each case on its own facts in light of those factors.

*Robertson v. Robertson*, 10–926 (La.App. 5 Cir. 4/26/11), 64 So.3d 354, 363. The factors listed in Article 134 are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. *Id.*

In addition to considering the preference of the twins, in its extensive reasons for judgment, the trial court expressed its great concern regarding the children's performance in school and their need for special attention in this area. The trial court found Ms. Ben's extensive experience as an educator assisting children with special needs placed her in a better position to manage the twins' education. The trial court also found that though Mr. Sanchez was a positive father figure for the twins since they were very young, he did not take an active parenting role in their lives until their mother died. After observing the twins' demeanor on the stand, he felt they lacked an emotional attachment to Mr. Sanchez. Finally, the trial court recognized that Ms. Etienne was a part of the children's daily lives since they were born and noted her strong emotional connection with the twins.

After reviewing the record before us, we do not find the trial court placed too much weight on the children's preference in this matter. The trial court carefully considered the best interest of the children and their needs at this stage of their lives. He determined their paternal and maternal grandmothers were in the best position to fulfill those needs. Therefore, we find no abuse of discretion in the trial court's award of joint custody of J.J. Ben and J.J. Ben to their maternal and paternal grandmothers.

In his third assignment of error, Mr. Sanchez argues that the trial court erred by disqualifying Mr. Sanchez as the children's legal tutor. As discussed above, in

its May 20, 2016 judgment, the trial court appointed Ms. Ben as the tutrix of the twins' financial matters and Ms. Etienne as undertutrix of the same. However, the trial court did not issue a specific ruling in this judgment disqualifying Mr. Sanchez as a legal tutor.

In his appellate brief, Mr. Sanchez contends the trial court's judgment in this matter contradicts an order issued on January 26, 2016, in a tutorship proceeding pending in the 29th Judicial District Court, Docket No. P–11646. Mr. Sanchez argues the court in the tutorship proceeding issued an order appointing him "legal tutor" for the twins. Mr. Sanchez failed to introduce any evidence of this January 26, 2016 order into the record of these proceedings.[5] Therefore, this issue is not properly before this Court. If a conflict exists between the order and judgment issued in these two proceedings, the parties will have to resolve the conflict with the underlying courts.

In his final assignment of error, Mr. Sanchez argues the trial court erred by declining to award him reasonable visitation with the twins. It does not appear the trial court declined to award Mr. Sanchez visitation, but rather noted in its reasons for judgment that it would not order visitation since neither side prayed for visitation in their pleadings. The trial court did, however, strongly encourage that the twins visit with Mr. Sanchez on a regular basis. We do not find that the trial court erred in failing to set visitation as Mr. Sanchez did not pray for visitation in the alternative in his petition or at the trial of the matter. We note that Mr. Sanchez may petition the trial court for a formal visitation ruling at any time.

5. During trial, Mr. Sanchez requested that the trial court take judicial notice of D'Vondriya's succession proceedings, P-11452, also pending in the 29th Judicial District Court. However, he did not request the same with respect to the tutorship proceedings.

**DECREE**

Based on the foregoing, we affirm the trial court's May 20, 2016 judgment which awarded joint custody of J.J. Ben and J.J. Ben to Rhonda Etienne and Yvonne Ben, and which named Ms. Ben as the tutrix and Ms. Etienne as undertutrix for the children's financial matters.

**AFFIRMED**